1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

RIGHTHAVEN LLC, a Nevada limited-liability company,

            Plaintiff,

v.

DEAN MOSTOFI, an individual,

            Defendant.

Case No.: 2:10-cv-1066-KJD-LRL

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

       Plaintiff Righthaven LLC ("Righthaven") hereby opposes Defendant Dean Mostofi's ("Defendant's") Motion to Dismiss for Lack of Subject Matter Jurisdiction. (The "Motion", Doc. # 25.)  Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), which asserts that Righthaven lacks standing to bring this action for copyright infringement.  (*Id.* at 1.)

       Righthaven's response is based on the below memorandum of points and authorities, the declaration of Steven A. Gibson (the "Gibson Decl.") and the declaration of Mark A. Hinueber (the "Hinueber Decl.") both of which have been filed in *Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-1066-KJD-GWF ("*Vote For The Worst*")(Doc. ## 41-42), the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

To begin with, Defendant's Motion serves to underscore the apparent willful disregard he has for the original literary content created by others.  Defendant, seeing an apparent opportunity to ride the groundswell of standing challenges commenced by other defendants and third parties, misappropriated the attorney-drafted work product and the associated legal research of counsel J. Malcom DeVoy IV of the Randazza Legal Group submitted in the form of motions to dismiss for lack of subject matter jurisdiction in the *Vote For The Worst* matter pending before this Court and the *Righthaven LLC v. v. Hoehn*, Case No. 2:11-cv-00050-KJD-GWF (Doc. # 16) matter pending before Judge Pro in "creating" the arguments contained in the Motion.  (Doc. # 25.) Although Defendant is representing himself in this action, taking the work of counsel for parties in other actions and submitting it in support of a request to dismiss a copyright infringement action is either an act of blatant disregard for the rights of others or just an act of remarkable stupidity.  Moreover, the fact that the Defendant arguably used the contents of a motion from the *Vote For The Worst* matter pending before this very Court, which involves the alleged unauthorized replication of a copyrighted work discussing the activities of contestants appearing on the enormously popular television show "American Idol", without even an attempt at, in the parlance of  "American Idol" judges "making it his own", strikes as simply comical in its irony.

Given Defendant's wholesale replication of content appearing in motions filed in two other pending actions in this judicial district, including an action before this Court, Righthaven has elected not to replicate the approximately sixty pages of supporting materials for resubmission in this case.  Rather, Righthaven has cited to the supporting declarations submitted in the *Vote For The Worst* matter, to which the Court undoubtedly has access, as evidence in support of this response.  (Doc. # 41, Gibson Decl.; Doc. # 42, Hinueber Decl.)  Defendant has been served with a copy of these supporting declarations along with a copy of Righthaven's response.  Should the Court require Righthaven to file separate supporting declarations in this action in order to adjudicate Defendant's Motion, it will do so.

With regard to the substantive allegations of Defendant's Motion, congress authorized a limited monopoly in copyrighted works "to motivate the creative activity of authors and inventors by the provision of a special reward."  *See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 429.   Yet, since the proliferation of the internet and the number of people with websites and blogs, copyright holders have seen their works repeatedly copied and posted online without permission, recognition, or compensation.  That is the case here, where Defendant displayed an unauthorized reproduction of an article by the *Las Vegas Review-Journal* on his website.   The abundance of infringement just like the one at issue here is why Stephens Media LLC ("Stephens Media"), owner of the *Las Vegas Review-Journal*, entered into an agreement with Righthaven to help it pursue these infringers.

Part of the strategy to pursuing online infringers requires Stephens Media to assign its copyright in a particular work to Righthaven, along with the right to sue for past, present and future infringement.  It is black letter law that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has standing to pursue a claim for infringement.  This is a much different situation than in *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005), where the plaintiff, assigned only a ***bare right to sue*** for past copyright infringement, lacked standing.  Given that the infringement claim against the Defendant is for an accrued cause of action, or past infringement, of the work at issue, Righthaven clearly has standing to maintain this action in view of *Silvers* given Stephens Media's assignment of ownership rights in and to the work to Righthaven along with the express right to sue for such actions.

To further clarify the mutual intent of Righthaven and Stephens Media to confer full ownership in copyright to Righthaven when entering into copyright assignments, both parties have provided declarations in support of this memorandum.  Thus, to the extent the Court finds that anything in the Strategic Alliance Agreement ("SAA") or copyright assignment is ambiguous such that it is unclear whether Righthaven has standing, it may interpret these agreements to confer full ownership rights in Righthaven.  The Court's ability to do this is also expressly set forth in the SAA, which vests the Court with the power to correct any defective

provision in order to "approximate the manifest intent of the [p]arties." (Doc. # 41 ¶ 11, Ex. 2 § 15.1; Doc. # 42 ¶ 10, Ex. 2 § 15.1.)

Finally, in an effort to cure any possible doubt as to whether Righthaven has full ownership in an assigned copyright, Righthaven and Stephens Media have recently executed a Clarification and Amendment to Strategic License Agreement (the "Amendment"), which not only makes clear that Righthaven has full ownership rights in any assigned copyright, it gives Stephens Media only a non-exclusive right to use an assigned work.

For these reasons, Righthaven respectfully requests that the Court find that it has at all times had standing to maintain this suit, or in the alternative, that any defect in Righthaven's standing has been cured by the Amendment. Accordingly, Defendant's Motion must be denied.

## II.    STATEMENT OF FACTS

Righthaven is the owner of a copyright registration for the literary piece entitled "Court reprimands lawyer over misleading ads" (the "Work"), which originally appeared in the *Las Vegas Review-Journal* on or about April 11, 2010. (Doc. # 1 ¶ 18, Ex. 1.) Consistent with its assignment of works in other cases, Stephens Media, the original owner of the Work, assigned all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements (the "Assignment"). (Doc. # 41 ¶ 4, Ex. 1; Doc. # 4 ¶ 4, Ex. 1.) On June 24, 2010, the United States Copyright Office (the "USCO") granted Righthaven registration for the Work. (Doc. # 1 ¶ 19, Ex. 3.)

The Defendant owns the Internet domain found at <deanmostofi.com> (the "Website"). (*Id.* ¶ 4.) On or about April 20, 2010, Defendant Mr. publicly displayed an unauthorized, wholesale reproduction of the Work on the Website. (*Id.* ¶¶ 8-9, Ex. 2.) Upon publicly displaying the unauthorized replication on his Website, the Defendant changed the Work's original title with the new title "Las Vegas Lawyer Reprimanded for False Advertising." (*Id.* ¶ 21, Ex. 2.) The Defendant also claimed authorship of the unauthorized replication of the Work, as he has done with the contents of the Motion. (*Id.* ¶ 22, Ex. 2.) The Work clearly depicts the Las Vegas *Review-Journal* as the original source publication. (*Id.* ¶ 7, Ex. 1.) Furthermore, the subject matter, at least in part, of the Work and the Infringement is the Nevada Supreme Court's

decision to reprimand a Las Vegas, Nevada-based attorney for said attorney's misleading advertisements. (Doc. # 1 ¶ 10, Exs. 1-2.)

Defendant responded to Righthaven's Complaint by filing a motion to dismiss on the grounds that this Court lacked personal jurisdiction over him.  (Doc. # 8.)  On March 22, 2011, the Court denied Defendant's motion to dismiss.  (Doc. # 19.)  Defendant answered the Complaint on April 5, 2011.  (Doc. # 21.)  Defendant filed the Motion on April 20, 2011. (Doc. # 25.)

As set forth below, Defendant's Motion must be denied because Righthaven was effectively conveyed ownership of the Work, along with, among other things, the right to seek redress of accrued infringement claims, through the Assignment.  The terms of the SAA, upon which Defendant relies, does not divest Righthaven of standing to maintain this action for past infringement of the Work.  To the extent there is any dispute about the parties' intent in entering into the transaction at issue, they have unquestionably expressed their intent and, if deemed necessary, have further clarified their intent through the Amendment.  Accordingly, the Court should conclude, as it has previously found, that Righthaven has standing to maintain this action.

## III.   ARGUMENT

Standing is a jurisdictional requirement that can be raised at any time, including *sua sponte* by the court.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008).  Pursuant to Section 501(b) of the Copyright Act, only "the legal or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement.  *Silvers*, 402 F.3d at 884. Section 106 of the Copyright Act, in turn, defines the exclusive rights that can be held in a copyright (*e.g.,* the right to reproduce, to prepare derivative works, and to distribute copies). Exclusive rights in a copyright may be transferred and owned separately—for example, through assignment or an exclusive license—but no exclusive rights exist other than those listed in Section 106.  *Silvers*, 402 F.3d at 885.  While the right to assert an accrued cause of action for copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright.  *See id.* at 890.

As the assignee-owner of the full right and title in and to the Work, Righthaven has standing to sue for acts of copyright infringement occurring after it acquired ownership of the copyright.   Pursuant to the express terms of the Assignment, Stephens Media also expressly transferred to Righthaven the right to assert accrued causes of action for infringement of the Work, giving Righthaven standing to sue for Defendant's infringement, even though that infringement occurred prior to the Assignment.  (Doc. # 41 ¶ 4, Ex. 1; Doc. # 42 ¶ 4, Ex. 1.)  In addition, Stephens Media and Righthaven recently executed a clarification and amendment to the SAA in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Doc. # 41 ¶ 12, Ex. 3; Doc. # 42 ¶ 11, Ex. 3.)  This Amendment has cured any defects in standing that existed under the parties' original contractual relationship.  (*Id.*)  Therefore, as set forth below, Righthaven respectfully requests that the Court find that Righthaven has standing to maintain this action.

A.       **Pursuant to the Written Assignment, Righthaven Has Standing to Sue for Past Infringement.**

Binding precedent establishes that the assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring this case.  In *Silvers*, the Ninth Circuit held that an assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work.  *Id.* at 889-90.  In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased.  *Silvers,* 402 F.3d at 889.

Multiple courts in this district have already determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers*, including this very Court in the *Vote For The Worst* matter (Doc. # 28 at 2-3), based on the plain language of the copyright assignment:

- *Righthaven LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010).

- *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

(*See also* Doc. # 41 ¶¶ 9-10.)

Just like the assignments at issue in the cases above, and as this Court has already determined, the Assignment transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright in and to the Work.

(Doc. # 41 ¶ 4, Ex. 1; Doc. # 42 ¶ 4, Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred upon Righthaven the exclusive rights required under the Copyright Act to bring suit for ***both*** past and future acts of infringement.  The Court has already reached this conclusion once upon examination of Righthaven's standing under *Silvers* in the *Vote For The Worst* case. (Doc. # 28 at 2-3.)  This inevitable observation aside, as parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work.  It also sought registration of the Work with the USCO and brought suit against a blatant infringer.

While Defendant argues that the SAA renders the Assignment ineffective, nothing in the SAA's provisions alter the unambiguous language of the Assignment or the rights that Righthaven acquired. [1]  First, the SAA does not effectuate the assignment of any work.  (Doc. #

---

[1] Righthaven further contends the Defendant lacks standing to challenge the contractual validity of the SAA.  Courts have held, that as a matter of public policy, it would be inequitable to allow an infringer to use the validity of transfer of rights to a copyrighted work as a defense when no dispute exists between the parties to the transfer.  *See Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428-29 (9th Cir. 1996); *Elden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36-37 (2d Cir. 1982); *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141 F.Supp.2d 224,

41 ¶ 5, Ex. 2 § 7.2; Doc. # 42 ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights.  (*Id.*)  The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works.  (*Id.*)  But the SAA itself does not cause an assignment of property rights.

Nor does the SAA's right of reversion provision have any impact on Righthaven's present standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions.  (*Id.* § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, unless and until Stephens Media exercises its right of reversion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Doc. # 4 Ex. 2 § 8; Doc. # 4, Ex. 2 § 8.), and there is nothing in the record to suggest it will.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers of rights."  *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment transfers all rights, title and interest in and to the assigned property.  *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some

227-28 (D. P.R. 2001)(denying motion to dismiss for lack of standing based on alleged invalidity of transfer of copyrighted interest).  Moreover, as a matter of general contract law, only the contracting parties to an agreement have standing to attack its validity.  *See, e.g., Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 792 (8th Cir. 1967).

8

interest to the same party or to another party, complete title to ownership vests in the assignee *prior to being divested through licensure*.

While the transactional structure described in the SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here.  As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement.  *Silvers,* 402 F.3d at 889-90.

The transactional structure under the SAA and the actual assignment of rights comport with the holding in *Silvers*.  Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned.  (*See, e.g.,* Doc. # 41 ¶ 4, Ex. 1; Doc. # 42 ¶ 4, Ex. 1.)  While Righthaven promises under the SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until *after* the assignment of ownership rights and the right to sue for past infringements is conveyed.  This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims.  This Court has already determined as much in denying the defendants' motion to dismiss in the *Vote For The Worst* action. (Doc. # 28 at 2-3.)  The same result is compelled upon examination of the Defendant's apparent "cut and paste" subject matter jurisdiction attack predicated on the SAA's disclosure.  Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the SAA.

/ / /

/ / /

/ / /

/ / /

9

**B.     The Court Should Construe the Contracts to Convey to Righthaven All Rights Necessary for It to Have Standing.**

Under Nevada law,[2] the Court should interpret the contracts to find that they convey any and all rights necessary to establish Righthaven as the true and lawful owner of the copyright to the Work.  To the extent there is any ambiguity with respect to whether the Assignment sufficiently conveyed the rights to Righthaven so that it has standing to bring this action, the court should look to parties' intent.  *Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 488, 117 P.3d 219, 224 (2005) (internal quotation omitted).  Moreover, pursuant to the express language of the SAA, if any portion of the SAA is deemed void or unenforceable, the Court is contractually vested with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties."  (Doc. # 41 ¶ 11, Ex. 2 § 15.1; Doc. # 42 ¶ 10, Ex. 2 § 15.1.)

Contrary to Defendant's conspiratorial assertions, there can be no question that the parties intended to convey to Righthaven any right necessary for it to bring suit.  As set forth in the accompanying declarations and as reflected in the SAA, the Assignment, and the recently-executed Amendment discussed below, the parties to the SAA and the Assignment intended to vest copyright ownership of specific works in Righthaven so as to grant it the right to sue for infringement, including past infringement, while still permitting Stephens Media to use the works going forward based on a license of rights to do so from Righthaven.  (Doc. # 41 ¶¶ 5-12, Exs. 2-3; Doc. # 42 ¶¶ 5-11, Exs. 2-3.)   Accordingly, the Court should construe the contracts in such a way that they convey to Righthaven all rights that are necessary to have standing to maintain this action.  If the Court does so, it will necessarily conclude once again that Righthaven has always had standing to bring this suit.

**C.     Standing Is Also Effected by the Amendment.**

As stated above, Righthaven has standing to bring suit pursuant to the Assignment and SAA, which expressly confer (and reflect the intent to confer) full copyright ownership on Righthaven.  Nevertheless, to further clarify the parties' intent—and to preempt any future

---

[2] The SAA expressly states that it is governed by Nevada law.  (Doc. # 41 ¶ 5, Ex. § 15.3; Doc. # 42 ¶ 5, Ex. § 15.3.)

challenges to Righthaven's standing—Righthaven and Stephens Media have clarified and amended their intent when entering into the SAA as set forth in the supporting declarations and in the Amendment.  (Doc. # 41 ¶ 12, Ex. 3; Doc. # 42 ¶ 11, Ex. 3.)  In the Amendment, Righthaven and Stephens Media promise to execute individual assignments for certain copyrighted works (as before), but Righthaven promises to grant Stephen's media only a non-exclusive license to Exploit the work.  (Doc. # 41 Ex. 3 at 1-2; Doc. # 42 Ex. 3 at 1-2.)  As a mere holder of the right to use the assigned copyrighted work, Stephens Media would not have standing to sue for infringement.  *See, e.g., Silvers* 402 F.3d at 884-85.  Thus, the sole party holding any exclusive rights, and the attendant standing to sue for infringement, would be Righthaven.  *See id.*  This agreement reflects the parties' intent to transfer full rights in the copyright to Righthaven.  (Doc. # 41 ¶¶ 5-12, Ex. 3; Doc. # 42 ¶¶ 5-11, Ex. 3.)  Further, the Amendment extinguishes the "right of reversion" previously held by Stephens Media, and replaces it with a standard option to re-purchase the copyright upon the satisfaction of certain conditions.  (Doc. # 41 Ex. 3 at 2-3; Doc. # 42 Ex. 3 at 2-3.)  The Amendment also contains provisions requiring Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the beneficial owner in the Work, in addition to its status as legal owner. (*Id.* at 1-2.)

Courts frequently allow parties to a copyright transfer to subsequently clarify or amend their agreement in order to express their original intent to grant the assignor the right to sue for infringement.  *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (recognizing that an oral assignment can be confirmed later in writing); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994); *see also Sabroso Publ'g, Inc.,* 141 F. Supp. 2d at 228; *Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 318 (S.D.N.Y. 1996) (giving effect to a "very late" amendment granting the plaintiff the right to bring the accrued causes of action); *Goldfinger Silver Art Co., Ltd. v. Int'l Silver Co.,* 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (holding that plaintiff could cure

standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993) (holding that second assignment cured standing defect).

Given that the parties to the Assignment and the Amendment do not dispute the rights in the Work and the Defendant has not been prejudiced in any way by the Amendment, the Court—if it finds that original standing was defective—should allow the Amendment to cure the defect without dismissing the case.[3]  *See Intimo, Inc.,* 948 F. Supp. at 317-18; *Infodek, Inc.,* 830 F. Supp. at 620; *Wade Williams Dist., Inc. v. Am. Broad. Co., Inc.,* 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005); *see also Dubuque Stone Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir. 1966); *Kilbourn v. Western Surety Co.,* 187 F.2d 567, 571 (10th Cir. 1951). Moreover, permitting subsequent clarification or amendment of the parties' original intent so as to cure any technical standing defects promotes judicial economy and reduces litigation costs that would necessarily arise from the dismissal and re-filing of a new action.  *Intimo, Inc.,* 948 F. Supp. at 318-19.

## D. Defendant's Claim That Righthaven Has Willfully Deceived The Court is Wholly Without Merit.

In a transparent attempt to benefit from the groundswell of Internet-based conspiracy theories and baseless attacks against the propriety of its alleged business model, Defendant alternatively requests dismissal of Righthaven's Complaint because it has willfully deceived the Court.  (Doc. # 25 at 6-7.)  As the above arguments clearly establish, Righthaven has standing to maintain this action based on Defendant's past infringement of the Work.  (Doc. # 41 ¶ 4, Ex. 1; Doc. # 42 ¶ 4, Ex. 1.) Righthaven has buttressed this inevitable conclusion by directing the Court to supporting declarations from both parties to the transaction that unquestionably demonstrate their intent in effectuating the Assignment. (Doc. # 41 ¶¶ 5-12, Exs. 2-3; Doc. # 42 ¶¶ 5-11, Exs. 2-3.)  Moreover, Righthaven has further submitted the Amendment, which, while unnecessary to vest the Court with standing for Defendant's past infringement under *Silvers*, unequivocally

---

[3]  Federal Rule of Civil Procedure 17(a) additionally supports Righthaven's request to have the parties' intent to grant the company standing to bring this action by recognizing and giving effect to the Amendment through ratification.  *See Clarkson Co. Ltd. v. Rockwell Int'l Corp.,* 441 F. Supp. 792, 797 (N.D. Cal. 1977).

clarifies Righthaven's standing to maintain this action along with actions for present and future infringements of the Work.   (Doc. # 41 ¶ 12, Ex. 3; Doc. # 42 ¶ 11, Ex. 3.)

Given the above-cited authority, supporting materials, and this Court's own prior decision in *Vote For The Worst* (Doc. # 28 at 2-3), Defendant simply cannot successfully justify dismissal of Righthaven's Complaint on the ground that it willfully deceived this Court by filing this action.  Rather, the record before the Court demonstrates Righthaven's entitlement to maintain this action in view of the Defendant's alleged past infringement of the Work.  Accordingly, Defendant's request for dismissal based on Righthaven's purported willful deception must be rejected and the rampant, unjustified Internet-based criticism attendant to such baseless claims must come to an end in view of this Court's anticipated, well-reasoned decision.

## IV.    CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court find that Righthaven has standing to maintain this infringement action.   Accordingly, Defendant's Motion must be denied.

Dated this 11th day of May, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

*Attorney for Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 11th day of May, 2011, I caused the foregoing document to be served by the Court's CM/ECF system, as well as via U.S. Mail on the 12th day of May along with the cited declarations of Steven A. Gibson (Doc. # 41) and of Mark A. Hinueber (Doc. # 42) that were filed in the *Vote For The Worst* matter referenced herein to the following:

Dean Mostofi
1737 Glastonberry Road
Potomac, Maryland 20854

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*

14