DEAN MOSTOFI, *PRO SE*
1737 GLASTONBERRY ROAD,
POTOMAC, MARYLAND 20854
TEL: 301-867-3887
FAX: 800-547-4541
E-mail: dean@deanmostofi.com

## UNITED STATE DISTRICT COURT

### DISTRICT OF NEVADA

| | | |
|---|---|---|
| RIGHTHAVEN LLC, | * | Case No.: 2:10-cv-1066-KJD-LRL |
| *Plaintiff,* | * | **DEFENDANT'S REPLY TO** |
| vs. | * | **PLAINITIFF'S RESPONSE TO** |
| DEAN MOSTOFI, *pro se* | * | **DEFENDANT'S MOTION TO DISMISS** |
| | | **FOR LACK OF SUBJECT MATTER** |
| *Defendant* | * | **JURISDICTION** |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant, Dean Mostofi, hereby files this Reply to Plaintiff Right*haven*, LLC's (hereinafter "Right*haven*" or the "Plaintiff") Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 29) filed on May 11, 2011 (served by U.S. mail on May 12, 2011) in opposition to Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction (Doc. # 28), filed on April 20, 2011.

## I. INTRODUCTION

As Judge Hunt recently noted in his scathing admonition of Right*haven*'s litigation tactics "if the facts are on your side, you pound on the facts. If the law is on your side, you pound on the law. If neither the facts nor the law is on your side, you pound on the table." As usual, Right*haven* is doing a lot of table pounding in its response to Defendant's instant motion. Like a

schoolyard bully mad at his victims for fighting back, Right*haven* is upset that unrepresented defendants are sharing resources and fighting back, which doesn't quiet fit-in with Plaintiff's business model that relies in large part on extorting quick nuisance settlements from individual bloggers who lack the resources to hire counsel. It is also no surprise that Right*haven*'s counsel, Shawn Mangano, Esq., in his response to the instant motion, has leveled personal insults at the undersigned. Mr. Mangano is well known for publically insulting and accusing every defendant who dares to criticize Right*haven*, of being mentally deranged. According to Mr. Mangano's self serving contention the entire blogosphere must consist of mentally unstable bloggers and journalists, as one can hardly come across a single commentator (or court for that matter) willing to defend Right*haven* for its legal thuggery dressed up as copyright enforcement. Right*haven* has taken a legitimate procedure designed to protect copyrights and turned it into a means of judicial extortion. As further proof that Right*haven* is knowingly engaging in frivolous litigation, it is worth noting that whenever Right*haven* faces stiff opposition, it quickly attempts to dismiss its action to prevent a represented defendant from obtaining an award of attorneys' fees. Evidently, Plaintiff fully understands the frivolity of its actions yet continues filing new lawsuits with the goal of extracting settlements for less than what it costs a defendant to hire counsel and fight back[1].

And now that its shakedown scheme is crumbling Plaintiff in desperation has pulled yet another rabbit out of its bag of tricks, which it disingenuously calls a "Clarification" of its Strategic Alliance Agreement with Stephens Media (SAA). In fact, this purported "Clarification" is not a clarification of the SAA but a sinister attempt to manufacture standing, *ex post*, after having already filed well over 275 meritless lawsuits including the instant case. While in some

---

[1] *See* e.g., *Righthaven v. Brian Hill* (Civil Action No. 1:11-cv-00211-JLK) (D. Colorado); *Righthaven v. Democratic Underground* (Case No. 2:10-01356-RLH-GWF) (D. Nev.).

instances an oral agreement may be later ratified or confirmed by a written memorandum of the transfer, a rule permitting retroactive assignments and transfers would inject uncertainty and unpredictability into copyright ownership, contrary to the intent of Congress in enacting the Copyright Act of 1976. If retroactive transfers and licenses were permissible, one could never reliably and definitively determine if and when an infringement occurred, because an infringement could be easily "undone" or "created" by a retroactive transfer. For this reason courts have consistently ruled that copyright assignments must be prospective and not retroactive. Since at the time Right*haven* filed this suit against Defendant it ***did not possess any of the exclusive rights***, pursuant to Section 106 of the 1976 Copyright Act, it cannot maintain its suit through fabricating a retroactive assignment by deceptively calling it a "Clarification" of the SAA. What Righ*haven* is calling a "Clarification" is in fact an entirely new agreement with Stephens Media purporting to assign copyrights that were never transferred before.

Notwithstanding the Plaintiff's bold attempt to manufacture standing *ex post* and to improperly evade the strictures of *Silvers*, Right*haven*'s "Clarification" must be summarily rejected because as the Supreme Court explained almost a century ago in a different but relevant context, "the courts will not permit themselves to be blinded . . . by mere forms . . . but, regardless of fictions, will deal with the substance of the transaction . . . as the justice of the case may require."[2] Courts deal with the substance rather than the form of transactions and will not permit important legislative policies to be defeated by artifices. Since the Copyright Act does not permit holders of rights under copyrights to choose third parties to bring suits on their behalf, Stephens Media's sham transfer of copyrights to Right*haven* for the express purpose of improperly manufacturing standing to sue should be given no credence.

---

[2] *Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490, 501 (1918).

This case should also be dismissed because Plaintiff and its counsel have repeatedly misled this Court. In addition to his duties to his clients, a lawyer also owes a duty of loyalty to the court, as an officer thereof, that demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates fraud upon the court. It is undisputed that Right*haven* had purposely withheld the SAA from the Defendant and this Court. Further, in its Certificate As To Interested Parties, pursuant to LR 7.1-1, Plaintiff and its counsel have deliberately omitted the disclosure of the material fact that Stephens Media, in accordance with the express terms of the SAA, will receive a 50% share of any proceeds recovered by the Plaintiff in this case. Additionally, Plaintiff and its counsel have intentionally withheld from Defendant and this Court the provisions of Right*haven* LLC's Charter, which has now been unsealed in *Righthaven v. Democratic Underground* (Doc.#107-2). Those provisions proffer further evidence that Right*haven* exists for the sole purpose of filing lawsuits on behalf of copyright holders, such as Stephens Media, for alleged infringements. Fraud upon the court involves unconscionable plans or schemes to improperly influence the court and to undermine the judicial process. This is precisely what Right*haven* and its counsel have attempted to do both in this case and in every one of the more than 275 cases filed by Right*haven* since March 2010[3].

Finally, while F.R. Civ. P. 17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, the Copyright Law is quite specific in stating that only the "owner of an exclusive right under a copyright" may bring suit. Congress never intended to make an accrued cause of action a commodity on an open market, permitting assignees without connection to the copyrighted work to pursue infringement claims, with the sole motive of

---

[3] In *Righthaven v. CIO* (Case No. 2:10-CV-1322-JCM-LRL), during a Show Cause Hearing held on December 28, 2010, when asked by Judge Mahan if Right*haven* had licensed the copyright to others, Mr. Mangano misled the court and conveniently refused to answer the question because on that date the secret SAA had not yet been discovered by the court. *See id.*, transcript of the hearing at p. 24, line 11, (Doc. #27).

harassing purported infringers to exact nuisance settlements. This, however, is Right*haven*'s sole purpose for existence.

## II.   ARGUMENT

Since the standing issues being briefed in the instant Motion are identical to the standing issues currently being briefed in *Righthaven v. Vote For The Worst LLC.* (Case No.: 2:10-cv-01045-KJD-RJJ), *Righthaven v. Democratic Underground* (Case No. 2:10-01356-RLH-GWF), and *Righthaven v. Pahrump Life* (Case No. 2:2010cv01575-JCM-PAL), rather than repeating the same arguments in support of this Reply to Plaintiff's Response to the instant Motion to Dismiss, Defendant respectfully requests that this Honorable Court take judicial notice of the abovementioned cases and to consider the reply brief filed in *Vote For The Worst LLC.*, on May 15, 2011 (Document # 43) (Exhibit A), and the reply brief filed in *Democratic Underground*, on May 20, 2011 (Document #107) (Exhibit B), and all the related exhibits[4]. Judicial notice is particularly applicable to the Court's own records of other cases closely related to the case before it. *MGIC Indem. Corp. v. Weisman*, 803 F. 2d 500 (9th Cir. 1986) (taking judicial notice of a motion to dismiss and supporting memorandum filed in another case); *US ex rel. Robinson Rancheria v. Borneo, Inc.*, 971 F. 2d 244, 248 (9th Cir. 1992) ("federal courts, in appropriate

---

[4] In particular Defendant respectfully requests that this Court consider the rulings in *Nafal v. Carter*, 540 F. Supp. 2d1128 (C.D. Cal. 2007), *aff'd* 388 Fed. Appx. 721 (9th Cir. 2010); *accord Righthaven v. Majorwager.com*, 2010 WL 4386499, at *2 n.2 (D. Nev. Oct. 28, 2010) ("Regardless of the assignment's assertions, if only a right to sue was transferred; Plaintiff may lack standing."); *Benchmark Homes, Inc. v. Legacy Home Builders LLC*, 2006 U.S. Dist. LEXIS 53879, at *16 (D. Neb. Jan. 26, 2006); *Gaia Techs.*, 93 F.3d at 779-80 (reversing trial court's failure to dismiss where a party lacked ownership of a patent and trademark at outset of litigation but subsequently executed a nunc pro tunc assignment); *Enzo Apa & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092-94 (Fed. Cir. 1998) (granting summary judgment where the plaintiff had initiated the suit as a non-exclusive patent licensee with no standing, despite subsequent grant of an exclusive licensee purporting to have retroactive effect).

1   circumstances, may take notice of proceedings in other courts, both within and without the

2   federal judicial system, if those proceedings have a direct relation to matters at issue.")

3
4           *A. Righthaven's Purported "Clarification" Of Its Strategic Alliance Agreement*
5               *With Stephens Media Must Be Summarily Rejected For Being Nothing But A*
               *Sham Crafted To Evade The Strictures Of Silvers And The Copyright Act.*
6

7           As the Supreme Court explained almost a century ago in a different but relevant context,

8   "the courts will not permit themselves to be blinded . . . by mere forms . . . but, regardless of

9   fictions, will deal with the substance of the transaction . . . as the justice of the case may require."
10
11  *Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490, 501

12  (1918). "Courts deal with the substance rather than the form of transactions and will not permit

13  important legislative policies to be defeated by artifices affecting legal title but not the practical

14  consequences of the existing situation." *Richmond Towers Tenant's Association v. Richmond*
15
16  *Towers LLC.* 2011 D.C. App. LEXIS 157 (D.C. April 14, 2011); *EDM Assocs. Inc. v. GEM*

17  *Cellular,* 597 A.2d 384, 389 (D.C. 1991) (*quoting United States v. Beach Assocs., Inc.,* 286 F.

18  Supp. 801, 807 (D. Md. 1968)); accord, *Tenants of 1255 New Hampshire Ave., N.W. v. District*

19  *of Columbia Rental Hous. Comm'n,* 647 A.2d 70, 76-77 (D.C. 1999).
20
21          In *Richmond Towers, supra,* the defendant landlord had attempted to evade the provisions

22  of a D.C. statute - requiring that before the owner of a housing accommodation may sell a 100%

23  interest in the accommodation, he or she shall give the tenant an opportunity to purchase the

24  accommodation - by selling only a 99.9% interest to the intended purchaser through an

25  intermediary. The D.C. Court of Appeals held that because the sale had occurred pursuant to an
26
27  overarching agreement designed to evade the strictures of the applicable statute, and looking at

28  the transaction as a whole, although the sale transferred only a 99.9% interest, for all practical

purposes it was a 100% sale and in violation of the statute. The court further noted that courts should treat transactions as a whole and should avoid exalting form over substance.

In *Silvers,* 402 F.3d at 905, the underlying premise upon which the Majority relied was that there should not be an aftermarket in causes of action for copyright infringement. As such, Stephens Media's transfer of copyrights to Right*haven* for the sole purpose of manufacturing standing and evading the strictures of *Silvers* and the Copyright Act must be recognized for what it is – a sham copyright assignment pursuant to an overarching agreement, to wit, the SAA. Therefore, this case should be dismissed for lack of subject-matter jurisdiction because under *Silvers* Plaintiff does not have standing to sue for the alleged copyright infringement.

### B.   *Stephens Media Should Not Be Permitted To Assign Copyrights To Righthaven Retroactively.*

There is little from a policy perspective for this Court to recommend a rule that allows retroactive licenses or assignments, and there are two strong reasons disfavoring them: (1) the need for predictability and certainty, and (2) discouragement of infringement. A rule permitting retroactive assignments and transfers would inject uncertainty and unpredictability into copyright ownership, contrary to the intent of Congress in enacting the Copyright Act of 1976. *See, e.g., Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (declaring that "Congress' paramount goal in revising the 1976 Act [was] enhancing predictability and certainty of copyright ownership"); *In re Cybernetic Servs. Inc.,* 252 F.3d 1039, 1056 (9th Cir.2001) ("[F]ederal copyright laws ensure predictability and certainty of copyright ownership. . . .") (quoting *In re Peregrine Entm't, Ltd.,* 116 B.R. 194, 199 (C.D.Cal.1990)). It would also damage, if not extinguish, the "principal purpose" of the

Copyright Act, which is "to encourage the origination of creative works by attaching enforceable property rights to them." *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir.1984); *see also Veeck v. S. Bldg. Code Congress Int'l Inc.*, 241 F.3d 398, 402 (5th Cir.2001) ("The core purpose of copyright law is 'to secure a fair return for an author's creative labor' and thereby '*to stimulate artistic creativity for the general public good.*'") (*quoting Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975)). If retroactive transfers and licenses were permissible, one could never reliably and definitively determine if and when an infringement occurred, because an infringement could be "undone" retroactively. *See Venegas-Hernandez v. Asociación De Compositores y Editores de Música Latinoamericana,* 424 F.3d 50, 60 (1 st Cir. 2005) ("Fitting agency concepts like 'retroactive authorization' into copyright law provides plenty of room for debate; obviously a license in 1998 did not 'cause' a 1993 infringement."). Similarly, one could never know who the pool of authorized users or licensors of a copyright would be at any given time, because a retroactive transfer could always turn an infringer into a potential user or licensor, who would then have the ability to grant his own retroactive licenses or retransfer his new (retroactive) interest retroactively.

## CONCLUSION

WHEREFORE, for the foregoing reasons and for the additional reasons stated in the reply briefs filed in *Righthaven v. Vote For The Worst LLC.* (Case No.: 2:10-cv-01045-KJD-RJJ) (Doc. #43) (Exhibit **A**), and *Righthave-n v. Democratic Underground* (Case No. 2:10-01356-RLH-GWF) (Doc. #107) (Exhibit **B**), together with all related exhibits, Defendant respectfully requests that this Court **GRANT** the instant Motion to Dismiss for Lack of Subject-Matter Jurisdiction. Defendant further requests that this Court take judicial notice and consider the arguments submitted by the parties during the upcoming Show Cause Hearing in *Righthaven v.*

1    *Pahrump Life* (Case No. 2:2010cv01575-JCM-PAL), scheduled for June 6, 2011, before Judge

2    Mahan.

3    Dated: May 23, 2011

4

5

6    Respectfully submitted,

7

8

9

10   Dean Mostofi
     1737 Glastonberry Road
11   Potomac, MD 20854
     Tel: (301) 867-3887
12   *Defendant, pro se*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

## CERTIFICATE OF SERVICE

4   Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I, Dean Mostofi, on this

5   23rd day of May, 2011, caused the documents entitled:

6
7
8   **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION**

9   **TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND ALL**

10   **RELATED ATTACHMENTS**

11
12
13   to be served as follows:

14   By depositing same for mailing in the United States Mail, in a sealed envelope addressed to:

15   Steven A. Gibson, Esq.,

16   Righthaven, LLC,

17   9960 West Cheyenne Avenue, Suite 210,

18   Las Vegas, Nevada, 89129-7701,

19   upon which first class postage was fully prepaid.

20
21   Dated: May 23, 2011

22
23
24
25   Dean Mostofi, *pro se*
    1737 Glastonberry Road,
26   Potomac, Maryland 20854
    Tel: 301-867-3887
27   Fax: 800-547-4541

28

Page 10 of 13                    – 10

1

2

**UNITED STATE DISTRICT COURT**

DISTRICT OF NEVADA

3    RIGHTHAVEN LLC,                              *

4              *Plaintiff,*                        *    CIVIL CASE No. 2:10-cv-1066 KJD-LRL

5              vs.                                  *

6    DEAN MOSTOFI                                  *    **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

7              *Defendant*                          *

8                                                  *

9                        *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10                              **ORDER**

11         On consideration of Defendant's Motion to Dismiss and Plaintiff's Opposition thereto, it is

12    **ORDERED** that Defendant's Motion is hereby **GRANTED**.

13

14

15         **SO ORDERED.**

16

17

18

19    _____
            Judge

20

21

22    COPIES TO:

23    STEVE A GIBSON, ESQ.                         DEAN MOSTOFI, *pro se*
      RIGHT*HAVEN* LLC.                            1737 Glastonberry Road,
24    9960 West Cheyenne Avenue, Suite 210         Potomac, Maryland 20854
      Las Vegas, Nevada 89129-7701                 Tel: 301-867-3887
25    702-527-5900                                 Fax: 800-547-4541
                                                   E-mail: dean@deanmostofi.com
26    sgibson@righthaven.com                       *Defendant, pro se*
      *Plaintiff*

27

28

Page 11 of 13                        - 11

1    DEAN MOSTOFI, *PRO SE*
     1737 GLASTONBERRY ROAD,
2    POTOMAC, MARYLAND 20854
     TEL: 301-867-3887
3    FAX: 800-547-4541
     E-mail: dean@deanmostofi.com

4

5

6                **UNITED STATE DISTRICT COURT**

7                  DISTRICT OF NEVADA

8    RIGHTHAVEN LLC,             *

9    *Plaintiff,*                   *

10    vs.                     *     CIVIL CASE No. 2:10-cv-1066 KJD-LRL

11    DEAN MOSTOFI, *pro se*      *

12    *Defendant*                 *           **EXHIBIT A**

13                       *

14         *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

15

16

17                  # EXHIBIT A

18

19    *Righthaven v. Vote For The Worst LLC.* (Case No.: 2:10-cv-01045-KJD-RJJ)

20                       (Doc. #43)

21                       **Reply Brief**

22

23

24

25

26

27

28

1  Marc J. Randazza (Admitted *Pro Hac Vice*)
2  J. Malcolm DeVoy IV (Nevada Bar No. 11950)
   RANDAZZA LEGAL GROUP
3  7001 W. Charleston Boulevard, #1043
   Las Vegas, Nevada 89117
4  Telephone: (888) 667-1113
   Facsimile: (305) 437-7662
5  Randazza.com

6  Attorneys for Defendants,
   *Vote for the Worst, LLC,*
7  *Nathan E. Palmer,*
   *and David J. Della Terza*
8

9                    UNITED STATES DISTRICT COURT

10                         DISTRICT OF NEVADA

11  RIGHTHAVEN, LLC, a Nevada limited-liability      Case No.: 2:10-cv-01045-KJD-RJJ
    company
12                                                   **DEFENDANTS' REPLY TO**
                                                     **PLAINTIFF'S RESPONSE TO**
13                  Plaintiff,                       **DEFENDANTS' MOTION TO**
         vs.                                         **DISMISS FOR LACK OF SUBJECT**
14                                                   **MATTER JURISDICTION**
    VOTE FOR THE WORST, LLC, an Utah
15  limited-liability company; NATHAN E.
    PALMER, an individual; and DAVID J. DELLA
16  TERZA, an individual,
17
                    Defendants.
18

19  **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**
        **TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

20          Defendants Vote for the Worst, LLC, Nathan E. Palmer, and David J. Della Terza

21  (collectively, "VFTW," or the "Defendants"), by and through counsel, reply to Plaintiff

22  Righthaven, LLC's (hereinafter "Righthaven['s]," or the "Plaintiff['s]") Response to Defendants'

23  Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 40) filed on May 9, 2011 in

24  opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. # 33),

25  filed on April 17, 2011.

26  **I. Introduction**

27          On May 9, 2011, Righthaven responded to Defendants' Motion to Dismiss (Doc. # 40)

28  and, simultaneously executed a "Clarification" (hereinafter, the "'Clarification'") of the Strategic

Randazza
Legal Group
7001 W. Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 1 -

1   Alliance Agreement (hereinafter, the "Agreement") between Righthaven and Stephens Media
2   LLC (hereinafter, "Stephens Media"). Decl. of Steve Gibson (Doc. # 41) at 3:13-24, Exh. 3;
3   Decl. of Mark Hinueber (Doc. # 42) at 3:10-21, Exh 3.   This "Clarification," conveniently
4   executed on the day Righthaven had to respond to Defendants' pending Motion (Doc. # 33),
5   supposedly rectifies the defects in Righthaven's Agreement, which governs the terms on which
6   Stephens Media assigns its copyrights to Righthaven.   The "Clarification", however, does no
7   such thing, and serves only as a cynical attempt to obfuscate the unlawful nature of Righthaven's
8   enterprise: The "Clarification," along with the Agreement, is a mere acquisition of the right to
9   sue for copyright infringement without the true transfer of any other rights under Title 17.  As the
10  assignment of a right to sue in copyright cases has already been deemed unlawful by this Circuit
11  and others, what is happening here is clear:   Righthaven's unlawful enterprise has been
12  unmasked, and it is now making a desperate attempt to revive its litigation business model.
13  Unfortunately for Righthaven, but fortunately for free expression and the rule of law, this "Hail
14  Mary pass" has fallen far short of its intended receiver – with the intended receiver being the
15  deception of the parties and this Honorable Court.

16        The restructuring of Righthaven's and Stephens Media's Agreement, supposedly effected
17  by the "Clarification," serves to do little more than re-arrange deck chairs on the Titanic. As
18  seen in the rest of the Agreement, which remains in effect, Righthaven has no purpose for
19  existence other than to sue on copyrights that it obtains *only after* finding evidence of
20  infringement.  A true and correct copy of this Agreement is attached to Defendants' Motion to
21  Dismiss (Doc. # 33 Exh. A) and is additionally attached hereto as Exhibit A. Exh. A §§ 3-5.
22  Despite giving Stephens Media a poorly worded and unspecific non-exclusive license to content
23  that Stephens Media assigned to Righthaven in the first place (Doc. # 41 Exh. 3 § 1; Doc. # 42
24  Exh. 3 § 1), the "Clarification" does not eliminate Stephens Media's right of reversion (Doc. #
25  41 Exh. 3 § 2; Doc. # 42 Exh. 3 § 2), and ultimately deprives Righthaven of any exclusive rights
26  in the assigned copyright (Doc. # 41 Exh. 3 §§ 1 and 2; Doc. # 42 Exh. 3 §§ 1 and 2) – the
27  possession of which   is an essential component of Article III standing in copyright cases.

28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 2 -

1    *Sybersound Records v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures*

2    *Entm't, Inc.*, 402 F.3d 881, 885, 890 (9th Cir. 2005).

3              This "Clarification" illuminates only one thing: Righthaven operates as a copyright

4    litigation factory, but it has no lawful interests or use for the copyrights it acquires from Stephens

5    Media.   If Righthaven were the copyrights' true legal and beneficial owner, it would not be

6    necessary for Righthaven to give Stephens Media 30 days' notice to use the assigned, already

7    infringed copyrights for any purpose other than litigation. (Doc. # 41 Exh. 3 § 1; Doc. # 42 Exh.

8    3 § 1.) Moreover, it would not give Stephens Media the unilateral right to buy back the assigned

9    copyright before Righthaven could use the any of the copyright's exclusive rights under 17

10   U.S.C. § 106. (Doc. # 41 Exh. 3 § 2; Doc. # 42 Exh. 3 § 2.)  Righthaven's CEO brings special

11   attention to Section 15.1 of the Agreement, allowing the Court to "correct" the Agreement, or

12   provide "direction" or "clarification." (Doc. # 41 at 3:5-9, 15-21.)  The Defendants agree, and

13   this correction should come from viewing the Agreement and its accompanying "Clarification"

14   for what they are – a cynical attempt to turn copyrights into lawsuits, and nothing more.

15   **II. Legal Standards**

16             Subject matter jurisdiction is an essential element to every lawsuit and must be

17   demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.*,

18   631 F.3d 939, 954 (9th Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

19   (1992)).  A central component to subject matter jurisdiction is the question of standing, which

20   requires that the party experience actual or imminent harm. *Lujan*, 504 U.S. at 561 (citing

21   *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990)).  A party's standing to bring a case is not subject to

22   waiver, and can be used to dismiss the instant action at any time. Fed. R. Civ. P. 12(h)(3); *U.S. v.*

23   *Hays*, 515 U.S. 737, 742 (1995); *Chapman*, 631 F.3d at 954.  Within the realm of copyright law,

24   17 U.S.C. 501(b) allows only the legal or beneficial owner of an exclusive right in a copyright,

25   specified in 17 U.S.C. § 106, to sue for infringement. *Silvers*, 402 F.3d at 884.

26   /

27   /

28   /

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

### III. Argument

Defendants do not seek to contest the validity of the Agreement or "Clarification" as contracts between Righthaven and Stephens Media, but contest the copyright rights Righthaven possesses – or, specifically, does not possess – as a function of those written contracts' intended operation. *See Silvers*, 402 F.3d at 884 (forbidding transfer of the bare right to sue), *compare Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428-29 (9th Cir. 1996) (precluding defendant from attacking the <u>transfer</u> of the copyrights used to sue for infringement) and *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.*, 141 F.Supp.2d 224, 227-28 (D. P.R. 2001) (preventing a defendant from attacking the contractual validity of a copyright transferee from the transferor to the transferee plaintiff).   As such, the Court is presented with an inquiry of what rights Righthaven obtains as a result of the transfer as opposed to a probe into the transaction itself. The answer to this latter question, as to what rights Righthaven acquires, is none.

Under the Agreement, even with the "Clarification," Righthaven does not have standing to bring this case.   Accordingly, this Court lacks subject matter jurisdiction over the dispute. Righthaven deceptively cites three cases in which it was the plaintiff for the proposition that Righthaven's assignments are legal under *Silvers*: *Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045- KJD-GWF (D. Nev. March 30, 2011); *Righthaven LLC v. Majorwager.com, Inc.*, 2010 WL 4386499 at *2 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

Righthaven's reliance on these cases is doubly flawed.   These cases considered only a one-page assignment between Righthaven and Stephens Media, and not the Agreement and "Clarification" that set forth the terms that control that transaction.   In those three cases, while Righthaven knew full well of the existence of the Agreement, it appears to have purposely hidden that agreement from the defendants in those cases. As the Agreement and "Clarification" were not on the public record at the time this District rendered its opinions in these cases, the full scope of Righthaven's relationship with Stephens Media could not be considered.   Now that the Agreement and "Clarification" are before this Court, it may realize Righthaven's complete lack of standing, as it is an unlawful lawsuit mill.   The fact that Righthaven fought mightily to keep

Randazza
Legal Group
7001 W Charleston Blv
#1043
Las Vegas, NV 89117
(888) 667-1113

- 4 -

1   the Agreement from coming to light demonstrates not only that the Righthaven scheme is

2   unlawful, but that Righthaven and its principals were fully aware of that fact. Now, they seek to

3   be rewarded for their "creativity," in ginning up a "Clarification".   Meanwhile, the

4   "Clarification" does nothing to cure the underlying lack of rights and lack of standing.

5          **A. Despite Its "Clarification", Righthaven Still Does Not Have the Right to Sue for**

6          **Infringement.**

7          Righthaven attempted to salvage its beleaguered Agreement by executing the

8   "Clarification," which memorialized the parties' intent in creating the initial Agreement. (Doc. #

9   41 Exh. 3; Doc. # 42 Exh. 3.)   Contrary to Righthaven's ostensible hopes, though, this

10  "Clarification" served only to make Righthaven's naked use of its acquired copyrights as the

11  basis of lawsuits – and only as the basis of lawsuits – even clearer.

12         The "Clarification" does not retroactively remedy Righthaven's lack of standing.  While

13  a subsequently executed agreement provides clarification regarding the parties' intent to cure

14  standing defects in copyright cases, it does not retroactively confer standing that previously did

15  not exist. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003); *Imperial*

16  *Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995); *Arthur*

17  *Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994); *Infodek, Inc.*

18  *v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993).  In these cases,

19  cited by Righthaven in its opposition, a clarification was allowed to put a previously executed

20  oral transfer into writing, or to include previously accrued causes of action in the assignment. *See*

21  *Infodek*, 830 F. Supp. at 620.  None of these cases support Righthaven's proposition that cure its

22  prior, ineffective attempt to transfer a copyright from Stephens Media to Righthaven with a new,

23  equally unsuccessful attempt to transfer Stephens Media's copyrights to Righthaven solely for

24  the purpose of litigation, in an effort to circumnavigate this Circuit's holding in *Silvers*. 402 F.3d

25  at 890.

26  /

27  /

28  /

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

***1. The "Clarification" Denies Righthaven of Substantially All Ability to Use Its Assigned Copyrighted for Anything – Except Lawsuits.***

Despite the May 9, 2011 "Clarification," Righthaven's Agreement with Stephens Media provides it with nothing more than the bare right to sue. An important component of Righthaven's "Clarification" is the revision of Agreement § 7.2 (Exh. A § 7.2) to no longer give Stephens Media an exclusive license to Exploit (defined in *id.* at Schedule 1) the copyrighted works for "any lawful purpose" (*id.* § 7.2). In its place, as the putative owner of the copyright, Righthaven has granted Stephens Media a non-exclusive license to Exploit the copyrighted work "to the greatest extent permitted by law" on condition that 1) Stephens Media pay Righthaven $1.00 per year for this right, and 2) that Righthaven give Stephens Media 30 days notice if it decides to Exploit the copyrighted work or receive any royalties from the copyright's use other than in connection with lawsuits, with failure to do so constituting a material breach of the Agreement. (Doc. # 41 Exh. 3 § 1; Doc. # 42 Exh. 3 § 1.)

This aspect of the "Clarification" is problematic for numerous reasons. First, Righthaven's non-exclusive license to Stephens Media contains no definitions as to duration, geography or media covered, but haphazardly lets Stephens Media use the copyright assigned to Righthaven "to the greatest extent permitted by law." (*Id.*) This broad language impairs the markets and interests of other licensees to which Righthaven could license its copyrighted works, such as those that better serve markets in which Stephens Market is permitted to compete, and especially in light of Righthaven's infringement litigation arrangement with Stephens Media evinced in Exhibit A §§ 3-5, and unchanged by the "Clarification."

Moreover, under the "Clarification," Righthaven's unilateral use of the assigned copyright would constitute a material breach of the Agreement, allowing Stephens Media to seek injunctive relief against Righthaven for using the copyright that it ostensibly owns. (Doc. # 41 Exh. 3 § 1; Doc. # 42 Exh. 3 § 1.) Such an extreme limitation by the assignor of a copyright is inimical to ownership of a copyright, yet in a desperate attempt to retain the right to extort money from VFTW (and hundreds of other defendants), Righthaven dishonestly insists that it is

Randazza
Legal Group
7001 W Charleston Blv
#1043
Las Vegas, NV 89117
(888) 667-1113

1   the owner of the assigned Stephens Media copyrights. (Doc. # 41 Exh. 3 § 3; Doc. # 42 Exh. 3 §

2   3.) This dishonesty must not be rewarded.

3          Stephens Media's $1.00-per-year license and royalty fee (Doc. # 41 Exh. 3 § 1; Doc. # 42

4   Exh. 3 § 1) is also misleading.  While a nominal fee for licensing back the copyright Stephens

5   Media originally assigned to Righthaven, this sum is vastly outweighed by the revenues Stephens

6   Media receives from Righthaven's litigation on the assigned copyright, as the Agreement –

7   unaltered by the "Clarification" in this respect – entitles Stephens Media to 50% of any recovery

8   Righthaven obtains from litigation. (Exh. A § 5).  With all of the components taken together,

9   Stephens Media assigns its copyright to Righthaven and pays $1.00 in order to receive 50% of

10  Righthaven's litigation recovery.[1]   Based on what little public information is available about

11  Righthaven's settlements, Stephens Media's recovery entitlement per copyright assignment has

12  been orders of magnitude greater than $1.[2]  Indeed, without the recovery clause in § 5 of the

13  Agreement (Exh. A. § 5), this entire arrangement would fail to be profitable for Stephens and

14  Righthaven and make no sense for either party, as Stephens assigns only copyrights that have

15  been – or it believes have been – infringed. (*See* Exh. A. § 3.)  It makes no sense for Stephens

16  Media to assign only its infringed copyrights to Righthaven, just to license them back and give

17  Righthaven the sole "right" to sue for infringement,[3] unless Righthaven's only purpose is to sue

18  on these assigned copyrights.

19         Righthaven and Stephens Media also used the "Clarification" to amend the reversion

20  provisions of its Agreement.  Instead of allowing Stephens Media to have a complete reversion

21  of the copyright (Exh. A § 8), the "Clarification" allows Stephens Media to, at any time, give

22  Righthaven 14 days notice that it will repurchase the previously assigned copyright for $10.

23  (Doc. # 41 Exh. 3 § 2; Doc. # 42 Exh. 3 § 2.)  What's more, upon exercising this option,

24  Stephens Media must repay Righthaven the costs Righthaven had undertaken to pursue

---

[1] This presumably includes sharing any attorneys' fees award with Stephens Media, potentially violating Fed. R. Civ. P. 54(d)(2).
[2] *See* Righthaven Lawsuits, http://righthavenlawsuits.com/ (*last accessed* May 10, 2011) (providing Righthaven's estimated revenues based on lawsuit settlements).
[3] The right to sue for copyright infringement is not one of the exclusive copyright rights provided under 17 U.S.C. § 106.

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

1    infringement actions on that assigned copyright. (*Id.*)  This new, revised section 8.2 goes into

2    considerable detail governing how Righthaven will be compensated and disputes settled in the

3    event of Stephens Media exercising its unilateral right to repurchase its assigned copyright from

4    Righthaven, even at the cost of terminating Righthaven's pending litigation (*id.*) – a profound

5    issue that belies Righthaven's claim as the true, legal and beneficial owner of the assigned

6    copyrights.

7          Operating together, sections 1 and 2 of the "Clarification" make it clear that Stephens

8    Media retains full ownership of the copyrights that Righthaven claims to own. (Doc. # 41 Exh. 3

9    §§ 1 and 2; Doc. # 42 Exh. 3 §§ 1 and 2.)  If Righthaven wants to exploit or otherwise license the

10   assigned copyright, it must give Stephens Media 30 days' notice before doing so. (Doc. # 41

11   Exh. 3 § 1; Doc. # 42 Exh. 3 § 1.)  Yet, once given notice of Righthaven's intent to use the

12   copyright it supposedly owns, Stephens Media may exercise its rights under new § 8.1 to

13   repurchase the copyright with 14 days' notice and the payment of $10.  This creates a loop

14   where, if Righthaven were to even try to use Stephens Media's assigned copyrights for a purpose

15   other than litigation, Stephens Media could (and certainly would) snatch them back before

16   Righthaven could actually use them.  Righthaven's and Stephens Media's characterization of this

17   arrangement as "ownership" is beyond bizarre, and reveals their intent to call an unlawful

18   assignment of the right to sue "ownership" in an effort to misdirect the Court.

19         Substantively, this is not a non-exclusive license, but an exclusive license to Stephens

20   Media.  This mislabeled exclusive license permits Stephens Media to use the assigned copyright

21   "to the greatest extent permitted by law" (*id.*) up to and until the time Righthaven uses or

22   licenses the copyright for a purpose other than infringement litigation. (*Id.*)  Should Righthaven

23   provide Stephens Media notice that it intends to use the copyright for non-litigation purposes,

24   though, Stephens Media can buy back its rights before anyone else can use the copyrights

25   supposedly owned by Righthaven. (Doc. # 41 Exh. 3 §§ 1 and 2; Doc. # 42 Exh. 3 §§ 1 and 2.)

26   *Sybersound*, 517 F.3d at 1150-51 (holding that only exclusive licensees may use or enforce the

27   rights they possess); *Davis*, 505 F.3d at 101 (observing that "no one other than the exclusive

28   licensee may exercise the right" where there is an exclusive license).

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 447-1113

- 8 -

*2. Taken Together, the Terms of Righthaven's Agreement and "Clarification"
Show that Righthaven is not the Owner of the Assigned Copyrights, but has
Merely been Assigned a Right to Sue.*

Righthaven's and Stephens Media's "Clarification" describes Righthaven as the copyright "owner," but it is a word without meaning in this circumstance. (Doc. # 41 Exh. 3 § 3; Doc. # 42 Exh. 3 § 3.) Just as a child that lacks understanding of the world around her may call a dog a "cat," that does not make it so.  Righthaven and Stephens Media have misidentified Righthaven as the owner of Stephens Media's assigned copyrights in § 3 of the "Clarification" (*id.*). This characterization of Righthaven as an owner is inaccurate in light of the excessive restrictions on Righthaven's use of the assigned copyrights contained within the Agreement (Exh. A) and amplified in the "Clarification" (Doc. # 41 Exh. 3; Doc. # 42 Exh. 3).

It is not uncommon for courts to encounter restrictive agreements that purport to transfer ownership of a copyright but, in reality, convey no such right. In *Lahiri v. Universal Music & Video Distribution Corporation*, 606 F.3d 1216, 1222 (9th Cir. 2010) the appeals court found that a settlement agreement purportedly recognizing a party in the litigation as an "owner" of a copyright was too restrictive to convey such a right, holding that "[t]he record demonstrates [the attorney] misled the district court by use of a settlement agreement that deceptively used ownership language, but did not convey or recognize [the assignee's ownership]."   This language should be of great instructive value for this Court, as the record in this case demonstrates the same thing.

Similarly, in *Nafal v. Carter*, the court held that the plaintiff's description in the putative assignment as a "co-owner" was not dispositive of the plaintiff's ownership rights. 540 F. Supp. 2d 1128, 1141 (C.D. Cal. 2007).  Instead, the court held that the relevant test to determine proper ownership of a copyright was "Whether an agreement transfers rights that are exclusive or nonexclusive is governed by the substance of what was given to the licensee and not the label that the parties put on the agreement." *Id.* at 1141-42, citing *Althin v. W. Suburban Kidney Ctr.*, 874 F. Supp. 837, 843 (N.D. Ill. 1994).

- 9 -

1    In *Nafal*, the document allegedly giving the plaintiff an ownership interest in the
2  copyright prohibited him from "exercising any decision-making authority over almost every
3  portion of the License Agreement." 540 F. Supp. 2d at 1142. Accordingly, the court found that
4  Nafal was not the owner of the work, lacked Article III standing to pursue a copyright
5  infringement claim, and disposed of the case at summary judgment. *Id.* at 1144. Similarly, in
6  *Althin*, the trial court found that the plaintiff company lacked standing to bring its copyright
7  infringement claims. 874 F. Supp. at 837. Upon review, the court found that the assignment
8  agreement that putatively made the company an exclusive copyright right holder merely
9  conveyed a non-exclusive license to the plaintiff company. *Id.* Specifically, the court found that
10 the rights transferred by the parties' agreement under the 1976 Copyright Act were "governed by
11 the substance of what was given to the licensee and not the label that the parties put on the
12 agreement." *Id.* As the licensor gave the licensee no right to transfer or assign the license
13 agreement, with only a very narrow exception, the court held that Althin did not acquire
14 sufficient rights to have standing to enforce them against others' infringement, and thus
15 dismissed the case on the defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss. *Id.*

16    As set forth above, Righthaven has extraordinarily limited rights for a copyright "owner."
17 Righthaven's fundamental rights to dispose of its copyrights are so limited and crippled that
18 cannot even use them for non-litigation purposes without seeking Stephens Media's approval,
19 lest it "materially breach" its Agreement. (Doc. # 41 Exh. 3 § 1; Doc. # 42 Exh. 3 § 1.)
20 Whenever Stephens Media wishes, with minimal notice, it may, without opposition, repurchase
21 its assigned copyrights for $10 apiece. (Doc. # 41 Exh. 3 § 2; Doc. # 42 Exh. 3 § 2.) As is
22 apparent from the Agreement, the only thing Righthaven has any authority to do is to pursue
23 infringement litigation. (Exh. A §§ 3-5.)

24    A number of provisions in the Agreement that are not affected by the "Clarification"
25 further deny Righthaven ownership of the copyright, and reserve rights to Stephens Media far
26 beyond those due to a non-exclusive licensee. As part of its copyright assignments to
27 Righthaven, Stephens Media is entitled to:

28

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 10 -

> maintain Encumbrances on Stephens Media Assigned Copyrights as part of an
> overall funding securitization whereby all or substantially all of Stephens Media's
> assets are Encumbered as part of said funding securitization and Stephens Media
> Assigned Copyrights are not singled-out as or part of a particularized group of
> Encumbered assets.

(Exh. A § 9.3.)  This provision entitles Stephens Media, putatively the non-exclusive licensee of the assigned copyrights under the "Clarification", to mortgage the copyrights ostensibly owned by Righthaven.   Thus, despite Righthaven being the apparent owner of these copyrights, Stephens Media is entitled to use them as security for funding and other financial obligations. This is inconsistent with the tale that Rightaven now weaves before this Court.

Stephens Media retains a number of other rights in the copyrights Righthaven claims to own.  In Agreement § 3.3 (*id.* § 3.3), Stephens Media retains the right to reassign the copyright, despite Righthaven's ownership, if Righthaven declines to sue for its infringement.   If Righthaven was the sole and true owner of the assigned copyright, Stephens Media would have no such rights, yet this section of the Agreement gives Stephens Media the right to reassign a copyright that it insists is owned by Righthavn. (*Id.*)  Righthaven further reveals the flimsiness of its "ownership" in Agreement § 3.4, in which it does not even have the exclusive right to conduct litigation, and grants Stephens Media – a mere non-exclusive licensee under the "Clarification," which normally would not have standing to sue for infringement – the right to pursue infringement litigation on its own, without Righthaven. (*Id.* § 3.4.)

In sum, all of Righthaven's rights to the copyrights assigned to it by Stephens Media are completely beholden to Stephens Media's unfettered whims: From Righthaven's ability to exploit or license the work to a party other than Stephens Media and Stephens Media's right to re-purchase any assigned copyright for $10 without Righthaven having any ability to oppose, to Righthaven's sole pre-authorized use of the assigned copyright being for copyright infringement under Agreement §§ 3.1-3.4 and Stephens Media's ability to pursue its own copyright infringement lawsuits.  Stephens Media's rights and privileges permeate the Agreement and "Clarification" so completely and thoroughly that Righthaven's "ownership" of the assigned copyright is little more than a cruel joke at VFTW's expense (and the expense of hundreds of

1   other defendants who have been sued under this unlawful arrangement, to say nothing for the
2   poor souls who have paid Righthaven its extortionate demands).

3          To the extent this Court must examine this Agreement, and correct it as Righthaven has
4   encouraged the Court to do in § 15.1 of its Agreement (*id.* § 15.1) in order to effect the parties'
5   "manifest intent" (Doc. # 41 at 3:8-12, 18-24; Doc. # 42 at 3:10-14, 15-21), it should find that it
6   is nothing more than a vehicle to unlawfully transfer the right to sue, and no other rights, under
7   the guise of copyright ownership.  Indeed, the Agreement and its "Clarification" haphazardly
8   consider Righthaven's ability to use and protect its copyright rights in all arenas except its
9   meticulously detailed scheme to pursue infringement litigation on the assigned copyrights in
10  Agreement §§ 3-5. (Exh. A. §§ 3-5.)  The very inclusion of § 15.1 (*id.* § 15.1) in the Agreement,
11  and its retention in the "Clarification," demonstrates that Righthaven and Stephens Media knew
12  their arrangement was a sham, yet they couldn't find a way to make the Righthaven model work
13  – predominantly because such operations are prohibited by *Silvers* and other law in this Circuit –
14  and want the Court to change the parties' agreement to effectuate its unlawful scheme.  Not only
15  is the Agreement and "Clarification" between Stephens Media and Righthaven unlawful, so too
16  is the parties' intent – to transfer the right to sue to Righthaven, with no other rights – and the
17  Court cannot cure what ails Righthaven and its business model.

18         The operation of this Agreement and its "Clarification" is nothing more than the transfer
19  of an accrued right to sue without any exclusive rights.  This practice has been held unlawful in
20  every jurisdiction to consider it, including the controlling Court of Appeals for the Ninth Circuit.
21  *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011); *U.S. v. Chalupnik*,
22  514 F.3d 748, 753 (8th Cir. 2008); *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007); *Silvers*, 402
23  F.3d at 885; *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991);
24  *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27 (2d Cir. 1982); *see also*
25  *Sybersound*, 517 F.3d at 1144.  No matter what Righthaven calls the rights it supposedly obtains,
26  substantive analysis reveals them to be little more than the bare right to sue – something that not
27  only is not provided for in 17 U.S.C. § 106, but has been specifically held to be unlawful in case
28  after case, and runs directly contrary to the Copyright Act's entire purpose.

- 12 -

1      **B. Defendants Were Justified in Claiming Righthaven Deceived the Court, and as**

2      **Righthaven's Deception Continues, Defendants Renew this Claim.**

3      In its Response brief (Doc. # 40), Righthaven argues, incorrectly, that the cause of

4 Defendants' argument for dismissal in light of Righthaven's misrepresentations is "internet-

5 based criticism" and "conspiracy theories" (Doc. # 40 at 11-12). Based on the Agreement (Exh.

6 A), which was the only publicly available information detailing the terms of Stephens Media's

7 assignments to Righthaven, Defendants' arguments were proper under the precedent of this

8 Circuit. *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983); *Phoceene Sous-*

9 *Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982).

10      At the time this argument was made (Doc. # 33 at 5-6) on April 17, 2011, Righthaven's

11 and Stephens Media's "Clarification" was not available on the public record. In fact, the

12 "Clarification" did not even exist at the time the Defendants filed their Motion (Doc. # 33), as it

13 was conveniently signed by both Righthaven and Stephens Media on May 9, 2011 – the date on

14 which Righthaven filed it with its Response (Doc. # 40). (Doc. # 41 Exh. 3; Doc. # 42 Exh. 3.)

15 The fact that Righthaven apparently operated for almost one and one-half years without

16 amending its Agreement or executing the "Clarification" before May 9, 2011, is clear evidence

17 that it was caught with its hand in the proverbial cookie jar of unlawful copyright assignments,

18 and is desperately, retroactively trying to protect its business model. As explained at the outset

19 of this brief, Righthaven's desperate, backward-looking attempt to make its model legal under

20 the precedent of this Circuit is not only unsuccessful, but does not cure its existing lack of

21 exclusive rights alleged in Defendants' Motion to Dismiss (Doc. # 33 at 5-6).

22      For the reasons articulated above, Righthaven still has not acquired the copyrights it

23 allegedly owns through Stephens Media's fraudulent assignments. As such, Righthaven's

24 assertions that it is the "owner" of the copyrighted work and possesses the exclusive rights to

25 reproduce the work, create derivatives of the copyrighted work, distribute copies of the work and

26 publicly display the work under 17 U.S.C. § 106, (Doc. # 1 ¶¶ 9, 25, 32-35) are false.

27      While this "Clarification" might be creative, the intent is clear. And, as Righthaven has

28 asked this court to interpret the Agreement and the "Clarification" to operate as the parties

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas, NV 89117
(888) 667-1113

- 13 -

1  | intended, the court should do so.  The court should recognize what these documents really mean
2  | – that the parties conspired to unlawfully create a copyright litigation entity, with no actual
3  | assignment of any intellectual property rights.  Upon doing so, this Court should end this case
4  | immediately.

5  |       **C. Substituting or Adding Stephens Media as Plaintiff in This Case is Improper, and**
6  |       **Will Not Remedy Righthaven's Lack of Standing.**

7  |       As a simple technical matter, under Local Rule 7.2, Rightaven's request to add or
8  | substitute Stephens Media as Plaintiff in this action is improper, as it should be brought before
9  | this Court as a separate motion.  Such a request for substitution is improperly brought with
10 | Righthaven's brief. (Doc. # 40 at 11).  Nevertheless, considering Righthaven's request at this
11 | time is in the interest of judicial economy.

12 |       The circumstances of this case do not permit Righthaven to add or substitute Stephens
13 | Media as a plaintiff in this case due to it being the proper party in interest.  When a plaintiff has
14 | not suffered an injury and lacked standing since a lawsuit's inception, a proper party in interest
15 | cannot substitute for the plaintiff later in litigation. *Lierboe v. State Farm Mut. Auto. Ins. Co.*,
16 | 350 F.3d 1018, 1022-23 (9th Cir. 2007); *Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 463
17 | (S.D. Cal. 2007).  As Righthaven never owned, nor was it ever the exclusive assignee, of a
18 | copyright right defined in 17 U.S.C. § 106, it <u>never</u> had a claim against VFTW, nor was there
19 | any confusion as to who the proper party-in-interest was.

20 |       If there were some actual bona-fide confusion as to the copyright's ownership, there
21 | might be grounds under which Stephens Media could be substituted in as the plaintiff.  *See*
22 | *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001); *Isbell v. DM Records, Inc.*,
23 | Case No. 4:07-cv-146, *2009 U.S. Dist. LEXIS 23735* at *2-3 (E.D. Tex. 2009).  However, the
24 | right to substitute a party is not a right granted to plaintiffs who get caught breaking the law, and
25 | then who want to save face.  This right is there for parties who have an honest misunderstanding
26 | of the legal owner of certain rights.  There is nothing honest about Righthaven, and it does not
27 | deserve such grace from this Honorable Court.  Righthaven's "Clarification" to its Agreement
28 | with Stephens Media does not confer standing upon Righthaven, as the Agreement still operates

Randazza
Legal Group
7001 W Charleston Blvd
#1043
Las Vegas NV 89117
(888) 667-1113

- 14 -

1    just as it ever has – to grant Righthaven the bare right to sue for infringement, and nothing more.
2    From the Agreement's construction and "Clarification's" added terms, there is no question that
3    Righthaven still lacks these rights.

4        This Agreement and its desperately manufactured "Clarification" exist solely to serve
5    whatever purpose is furthered by Stephens Media not being the plaintiff in the more than 250
6    lawsuits filed by Righthaven.  Ironically, if Stephens Media had acted as the plaintiff in these
7    cases, it would obviate the need for its attempts to appear as if it had transferred some kind of
8    copyright rights to Righthaven in an effort to masquerade its assignment of the bare right to sue.
9    For whatever reason, Stephens Media chose to ignore *Silvers*, set up a copyright litigation entity,
10   and attempted to dance around this Circuit's precedent forbidding exactly Righthaven's and
11   Stephens Media's relationship *ex post*.

## Conclusion

13       Despite Righthaven's last-minute "Clarification" of its Agreement with Stephens Media,
14   the relationship between the parties fails to convey Righthaven ownership or any exclusive rights
15   in the allegedly assigned copyright.  As such, Righthaven lacks, and has never possessed,
16   standing to bring this action, and this Court therefore lacks subject matter jurisdiction over the
17   dispute.  Defendants' allegations of Righthaven's representations were, and continue to be,
18   accurate, and provide this Court another justification for dismissing this action.  Finally, no
19   substitution or addition of parties at this juncture would be proper, or curative of Righthaven's
20   fundamental standing defects.  Accordingly, Defendants' Motion to Dismiss for Lack of Subject
21   Matter Jurisdiction (Doc. # 33) should be granted.

Dated: May 15, 2011

Respectfully Submitted,
RANDAZZA LEGAL GROUP

Marc J. Randazza
J. Malcolm DeVoy IV

Attorneys for Defendants,
*Vote for the Worst, LLC,*
*Nathan E. Palmer,*
*and David J. Della Terza*

Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

1

**CERTIFICATE OF SERVICE**

2        Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a

3  representative of Randazza Legal Group and that on this 15th day of May, 2011, I caused

4  documents entitled:

5  **DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION**

6  **TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

7  to be served as follows:

8        [  ]    by depositing same for mailing in the United States Mail, in a sealed envelope
                  addressed to Steven A. Gibson, Esq., Righthaven, LLC, 9960 West Cheyenne
9                 Avenue, Suite 210, Las Vegas, Nevada, 89129-7701, upon which first class
10                postage was fully prepaid; and/or

11       [  ]    Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile as indicated; and/or

12

13       [  ]    to be hand-delivered;

14

15       [ X ]   by the Court's CM/ECF system.

16

17                                    /s/ J. Malcolm DeVoy_____

18                                    J. Malcolm DeVoy

19

20

21

22

23

24

25

26

27

28
Randazza
Legal Group
7001 W Charleston Blvd
# 1043
Las Vegas, NV 89117
(888) 667-1113

DEAN MOSTOFI, *PRO SE*
1737 GLASTONBERRY ROAD,
POTOMAC, MARYLAND 20854
TEL: 301-867-3887
FAX: 800-547-4541
E-mail: dean@deanmostofi.com

## UNITED STATE DISTRICT COURT

### DISTRICT OF NEVADA

RIGHTHAVEN LLC,                    *

*Plaintiff,*                       *

vs.                                *

DEAN MOSTOFI, *pro se*             *

*Defendant*                        *

                                   *

CIVIL CASE No. 2:10-cv-1066 KJD-LRL

**EXHIBIT B**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# EXHIBIT B

*Righthaven v. Democratic Underground* (Case No. 2:10-01356-RLH-GWF)

(Doc. #107)

**Reply Brief**

1   LAURENCE F. PULGRAM (CA State Bar No. 115163) (*pro hac vice*)
    lpulgram@fenwick.com
2   CLIFFORD C. WEBB (CA State Bar No. 260885) (*pro hac vice*)
    cwebb@fenwick.com
3   FENWICK & WEST LLP
    555 California Street, 12th Floor
4   San Francisco, California 94104
    Telephone:    (415) 875-2300
5   Facsimile:    (415) 281-1350

6   KURT OPSAHL (CA State Bar No. 191303) (*pro hac vice*)
    kurt@eff.org
7   CORYNNE MCSHERRY (CA State Bar No. 221504) (*pro hac vice*)
    corynne@eff.org
8   ELECTRONIC FRONTIER FOUNDATION
    454 Shotwell Street
9   San Francisco, California 94110
    Telephone:    (415) 436-9333
10  Facsimile:    (415) 436-9993

11  CHAD BOWERS (NV State Bar No. 7283)
    bowers@lawyer.com
12  CHAD A. BOWERS, LTD
    3202 West Charleston Boulevard
13  Las Vegas, Nevada 89102
    Telephone:    (702) 457-1001
14  Attorneys for Defendant and Counterclaimant
    DEMOCRATIC UNDERGROUND, LLC, and
15  Defendant DAVID ALLEN

16                    **UNITED STATES DISTRICT COURT**
                      **FOR THE DISTRICT OF NEVADA**
17

18  RIGHTHAVEN LLC, a Nevada limited liability company,     Case No. 2:10-01356-RLH (GWF)

19                  Plaintiff,

20          v.                                              **DEFENDANTS' REPLY IN**
                                                            **SUPPORT OF**
    DEMOCRATIC UNDERGROUND, LLC, a District of              **SUPPLEMENTAL MEMO**
21  Columbia limited-liability company; and DAVID           **ADDRESSING RECENTLY**
    ALLEN, an individual,                                   **PRODUCED EVIDENCE**
22                                                          **RELATING TO PENDING**
                    Defendants.                             **MOTIONS**
23  DEMOCRATIC UNDERGROUND, LLC, a District of
    Columbia limited-liability company,
24
                    Counterclaimant,
25          v.

26  RIGHTHAVEN LLC, a Nevada limited liability company,
    and STEPHENS MEDIA LLC, a Nevada limited-liability
27  company,

28                  Counterdefendants.

REPLY IN SUPPORT OF DEFENDANT'S
SUPPLEMENTAL MEMO                                           CASE NO. 2:10-cv-01356-RLJ (GWF)

**INTRODUCTION**

Production of the Strategic Alliance Agreement ("SAA") revealed Righthaven's relationship with Stephens Media to be what was always suspected:  an illegitimate attempt to vest an entity with nothing more than the right to prosecute actions for copyright infringement. As the Ninth Circuit recognized in *Silvers*, Congress prohibited such arrangements under the Copyright Act.  Righthaven makes a half-hearted argument that for it to agree in the SAA that Stephens Media "shall retain" an "exclusive license" to all rights under the copyright *other* than the right to sue, Righthaven must have first held, for a nanosecond, all the rights it licensed back. Hogwash.  The exclusive license by which Stephens Media "retained" the real ownership in the copyright occurred *simultaneously* with its grant of any purported Assignment.   The reality is inescapable:  Stephens Media always retained the exclusive rights.  When Righthaven filed this action against Defendants, it had no rights other than the right to sue, and accordingly no standing to pursue any claims of copyright infringement.

In an effort to paper over this hole, Righthaven and Stephens Media have attempted an 11th-hour gambit:  on the same day they filed their brief, nine months after filing this lawsuit, they entered into a "Clarification and Amendment" of the SAA (the "Amendment"), attempting to create the illusion of ownership by Righthaven.  But no Amendment could cure this defect. Jurisdictional facts establishing standing must exist at the outset of litigation. They cannot be subsequently invented.  For these reasons, alone, rejection of Righthaven's claims is warranted.

In any event, the Amendment's efforts to "retroactively" recharacterize the SAA—as though all that matters is what the parties call their transaction, rather than its real effect—only reinforces the phony nature of Righthaven's purported ownership.  Recognizing that Stephens Media's possession of an exclusive license meant that Righthaven had none of the rights required to sue, the Amendment collusively renames Stephens Media as a "non-exclusive licensee."  But just changing the label does not vest Righthaven with genuine ownership or control.  Even under the Amendment, Stephens Media continues to dictate (i) whether any lawsuit can be filed by its agent, Righthaven; (ii) whether to reclaim the copyright at any time it wishes (for a nominal

REPLY IN SUPPORT OF DEFENDANT'S
SUPPLEMENTAL MEMO                       1              CASE NO. 2:10-cv-01356-RLJ (GWF)

1   payment of $10); and (iii) whether Righthaven can enter any other license—which Righthaven

2   has no demonstrated intention to do, and which the Amendment allows Stephens Media to veto.

3   Stephens Media's right to control any decision with respect to the copyright, including any

4   license to anyone else, shows that, regardless of wordplay, it is still the exclusive licensee.

5       This Court is obligated to look at the practical reality of the transaction, not merely the

6   labels employed in an attempt to evade the *Silvers* rule. *See Nafal v. Carter*, 540 F. Supp. 2d

7   1128 (C.D. Cal. 2007), *aff'd* 388 Fed. Appx. 721 (9th Cir. 2010); *accord Righthaven v.*

8   *Majorwager.com*, 2010 WL 4386499, at *2 n.2 (D.Nev. Oct. 28, 2010) ("Regardless of the

9   assignment's assertions, if only a right to sue was transferred; Plaintiff may lack standing."). The

10  very machinations orchestrated in the Amendment reveal Righthaven's "ownership" to be a sham.

11  **I.     RIGHTHAVEN HAS NO STANDING UNDER THE ORIGINAL SAA**

12      A plaintiff's standing is "an essential and unchanging part of the case-or-controversy

13  requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  As such,

14  standing must be considered by the court in all cases, even where the parties fail to raise it.

15  *United States v. Hays*, 515 U.S. 737, 742 (1995).  Standing is not determined in the abstract, but

16  rather by the specific claims that a party brings. *Allen v. Wright*, 468 U.S. 737, 752 (1984).

17      Only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . .

18  to institute an action for any infringement." 17 U.S.C. § 501(b).  Section 501(b) limits standing

19  to pursue infringement actions to only those who possess one of the exclusive rights under 17

20  U.S.C. § 106. *See Silvers v. Sony Pictures Entm't., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (*en*

21  *banc*).  *Silvers* explicitly rejected the notion that bare assignment of the right to sue, without even

22  one of the exclusive rights under Section 106, is sufficient.  *Id.*  In so doing, the Ninth Circuit

23  continued longstanding practice, reaching back to the 1909 Copyright Act, of unifying the right to

24  sue for infringement and ownership of some or all of the rights under copyright. *Id.* at 886.

25      **A.     There Was Never Any Transfer of Rights Under the SAA to Righthaven**

26      Righthaven's argument that it ever legitimately possessed any exclusive rights under the

27  Assignment ignores both the clear language of the SAA and the practical reality of the

28  transaction.  Prior to the execution of any purported Assignment, Stephens Media held all of the

1    exclusive rights under Section 106 and the right to sue.  After the purported Assignment, as

2    defined by the SAA, Stephens Media continued to own these rights, and all that changed is that

3    Righthaven now claimed to have a right to sue for infringement.  No matter how Righthaven tries

4    to spin the transaction, in real terms it is still nothing but a bare assignment of the right to sue, a

5    transaction that *Silvers* specifically forbids. *Silvers*, 402 F.3d at 890.

6            Righthaven's Response tries to push these facts under the rug by focusing almost

7    exclusively on the Assignment itself in isolation, claiming that "[a]t the moment of the

8    Assignment, Righthaven became the owner of the Work." *See* Dkt. 100 ("Response") at 6.  This

9    is pure misdirection, as the SAA, by its terms, governs all assignments from Stephens Media to

10   Righthaven.  Hinueber Decl. Ex. 2 ("SAA") § 7.1.  The SAA makes clear that Righthaven never

11   obtained *any* rights under *any* Assignment, other than the right to sue.  Section 7.2 simultaneously

12   provides that Stephens Media "***shall retain***" "an exclusive license" to Exploit the work

13   purportedly assigned, and denies Righthaven any rights to Exploit the assigned works other than

14   by litigation.  SAA § 7.2 (emphasis added).  Under this structure, no rights under Section 106

15   ever actually change hands, not even for a nanosecond.

16           Righthaven misreads the SAA in arguing that it was granted, if only for a moment, rights

17   in the work—rights that it concedes it simultaneously transferred back to Stephens Media. *See*

18   Response at 8.  Ignoring the word "retain[s]," Righthaven hangs its hopes on the fiction of a

19   nanosecond of ownership, contending that "there can be no license [granted back to Stephens

20   Media] until ***after*** the assignment of ownership rights and the right to sue." *Id.* (emphasis in

21   original).  Of course, since the "Assignment" and Stephens Media's retaining of its right to

22   exploit occurred *simultaneously* through the SAA, not even a nanosecond passed.  But whether a

23   nanosecond passed or not, that is not the kind of unity of exclusive rights and the right to sue

24   required under American copyright law for the last century. *See Silvers*, 402 F.3d at 886.  If

25   anything, such a construct only thumbs its nose at the *Silvers* rule.[1]

---

26   [1] In arguing that it had a nanosecond of ownership, Righthaven effectively concedes that, after all the Section 106
     rights are transferred "back" to Stephens Media, Stephens Media is by definition the exclusive owner, leaving
27   Righthaven nothing left of the exclusive rights under Section 106. *See* 17 U.S.C. § 101 (definition of "transfer of
     copyright ownership" as including a transfer of exclusive license); *see also Campbell v. Trustees of Stanford Univ.*,
28   817 F.2d 499 (9th Cir. 1987); *US Naval Institute v. Charter Comm's*, 936 F. 2d 692, 695 (2d Cir. 1991).

1        The SAA is also littered with confirmation that even any ephemeral ownership by

2   Righthaven would be a fiction.  After an "Assignment," Stephens Media still has: the "unfettered

3   and exclusive ability" to "use, make, sell, or otherwise exploit in any manner whatsoever" the

4   work "for any lawful purpose" (SAA § 7.2); the sole right to "receipt of royalties from the

5   Exploitation" (*id.*); the right to "sell, grant any Encumbrance on or in or assign, any of Stephens

6   Media Assigned Copyrights to any third Person" (*id.* § 9.3); the right to choose whether or not an

7   alleged infringer will be sued at all (*id.* § 3.3); and a right or automatic reversion should

8   Righthaven decide *not* to pursue an infringement action.  *Id.* § 3.3.  Perhaps most starkly,

9   Stephens Media maintains "the right at any time to terminate, in good faith, any Copyright

10  Assignment . . . and enjoy a right of complete reversion to the ownership."  *Id.* § 8.[2]  These rights

11  are, by their nature, incidents of ownership.  Their investment in Stephens Media undermines any

12  suggestion that Righthaven is the real owner.

13       The bogus nature of this set up goes deeper than just the SAA, however.  Righthaven's

14  Operating Agreement ("RHOA"), part of an "integrated transaction" with the SAA that governs

15  Righthaven's operation as an LLC (SAA § 2), describes its "Focus"—that is, the *only* activity it

16  may engage in (absent a vote of the members—which has not been asserted here).  Declaration of

17  Laurence Pulgram ("Pulgram Decl.") Ex. 1 ("RHOA") at § 3.  Pursuant to the RHOA,

18  Righthaven was created "to receive a limited, revocable assignment (with a license-back) of

19  copyrights from third Persons in order to enable the Company to recover damages associated with

20  Identified Infringements." *Id.* § 3.2(c).  While Righthaven would submit copyright registration

21  applications that identify itself as the owner, its charter provides that any "customer that

22  respectively assigned said copyrights would ultimately enjoy the copyright registration upon

23  revocation of the assignment."  RHOA § 3.2(d); *see also* SAA § 8 (referencing "registrations of

24  copyrights made and/or procured by Righthaven for the benefit of Stephens Media.").  This Focus

25

26  [2] Righthaven contends that Stephens Media's right of reversion "has no impact on Rigthhaven's current ownership
    status . . . unless and until Stephens Media exercises its right of reversion . . . [and] that there is nothing *in the record*

27  to suggest it will."  Response at 7 (emphasis added).  While Section 3.2(d) of the Righthaven's Operating Agreement
    was not then "in the record," it clarifies that the entire plan was always that Stephens Media would revoke the

28  assignment and enjoy the benefit of any copyright registration that Righthaven secures.

REPLY IN SUPPORT OF DEFENDANT'S                    4              CASE NO. 2:10-cv-01356-RLJ (GWF)
SUPPLEMENTAL MEMO

1    on bringing lawsuits reconfirms that Righthaven's purported "ownership" served no purpose

2    other than to litigate, thereby precluding its standing to sue when this case was filed.

3    **II.     BECAUSE RIGHTHAVEN HAD NO STANDING WHEN IT FILED ITS
            COMPLAINT, ITS CLAIM MUST BE DISMISSED**

4

5              Regardless of the Amendment's terms, the fact that Righthaven had no standing to pursue

6    this action at the time it filed its complaint disposes of its claim.  In determining standing, the

7    existence of federal jurisdiction ordinarily depends on the facts as they exist at the time the

8    complaint is filed.  *Lujan*, 504 U.S. at 569.  While a court may allow the amendment of a

9    defective *allegation* of jurisdiction, it cannot allow an amendment of defects in the jurisdictional

10   *facts* themselves; if the underlying facts when filed cannot create jurisdiction, the case must be

11   dismissed regardless of whether jurisdiction is manufactured later.  *See, e.g., Gaia Techs., Inc. v.*

12   *Reconversion Techs., Inc.*, 93 F.3d 774, 779-80 (Fed. Cir. 1996).

13             Accordingly, a decision remarkably similar to the present case rejected an attempt to

14   sidestep *Silvers'* ban on the assignment of the bare right to sue, holding that a later transfer of

15   Section 106 rights could not cure the lack of standing at the outset.  *Benchmark Homes, Inc. v.*

16   *Legacy Home Builders LLC*, 2006 U.S. Dist. LEXIS 53879, at *16 (D. Neb. Jan. 26, 2006).

17   Likewise with patents and trademarks, where a plaintiff initiates an action without rights in the

18   intellectual property, even where they subsequently obtain those rights, their lack of standing

19   cannot be cured and the case should be dismissed.  *See, e.g. Gaia Techs.*, 93 F.3d at 779-80

20   (reversing trial court's failure to dismiss where a party lacked ownership of a patent and

21   trademark at outset of litigation but subsequently executed a *nunc pro tunc* assignment); *Enzo*

22   *Apa & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092-94 (Fed. Cir. 1998) (granting summary

23   judgment where the plaintiff had initiated the suit as a non-exclusive patent licensee with no

24   standing, despite subsequent grant of an exclusive licensee purporting to have retroactive effect).[3]

25   [3] The cases cited by Righthaven do not dictate a contrary result.  The majority address the situation where an oral
     assignment of rights was later ratified by the required written agreement (*Billy-Bob Teeth, Inc v. Novelty, Inc.*, 329

26   F.3d 586 (7th Cir. 2003); *Imperial Residential Design, Inc. v. The Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir.
     1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994)); or address a

27   situation in which an assignment was simply silent on the matter of the right to sue for past infringement.  *Intimo,*
     *Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315 (S.D.N.Y. 1996); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830

28   F. Supp. 614 (N.D. Ga. 1993).  Crucially, none deal with the type of situation here where a plaintiff initially enters an
     illegitimate transaction and later tries to back fill its lack of any semblance of rights to pursue an action.

REPLY IN SUPPORT OF DEFENDANT'S                    5                 CASE NO. 2:10-cv-01356-RLJ (GWF)
SUPPLEMENTAL MEMO

1          Because Righthaven definitively lacked any exclusive rights at the time the complaint was

2    filed, as in *Benchmark*, it cannot cure this defect by later machinations.[4]

3    **III.    RIGHTHAVEN'S AMENDMENT DOES NOT PROVIDE IT STANDING, BUT
     MERELY RECONFIRMS THE SHAM NATURE OF ITS "OWNERSHIP"**

4

5          In a tacit acknowledgement of the flaws inherent in the SAA, Righthaven and Stephens

6    Media signed the Amendment to the SAA on the very day Righthaven's Response was filed, May

7    9, 2011. *See* Hinueber Decl. Ex. 3. Righthaven claims that the purpose of the Amendment is to

8    "cure any possible doubt as to whether Righthaven has full ownership in an assigned copyright,"

9    and, accordingly, standing to pursue this and its hundreds of other suits. Response at 3. The

10   Amendment fails in its purpose for at least three reasons. First, as explained above, regardless of

11   the Amendment's effect now, Righthaven had no standing at the time the complaint was filed, a

12   defect that cannot be fixed *nunc pro tunc*. Second, as explained below, the Amendment's

13   cosmetic rewording does not change the reality that Stephens Media is still the holder of all of the

14   exclusive rights in the copyright with full control over Righthaven's actions. Finally, even

15   assuming the Amendment technically sufficed to vest some indicia of ownership in Righthaven,

16   an inquiry beneath that window dressing reveals its entirely sham nature.

17       **A.    Stephens Media Still Retains Actual Ownership Under the Amendment**

18         The most substantial, and at the same time most transparent, change is the Amendment to

19   Section 7.2. As noted, Section 7.2 of the original SAA provided that, simultaneously with

20   execution of an assignment from Stephens Media to Righthaven, Stephens Media would "retain

21   (and Righthaven hereby grants) an exclusive license" to exploit the assigned work. SAA § 7.2.

22   Amended Section 7.2 now reads that, simultaneously with assignment, "Stephens Media is

23   granted a non-exclusive license to Exploit [the work] to the greatest extent permitted by law in

24   consideration of payment [of] $1.00." Amendment § 7.2. This artful wordplay and token grant

25   of consideration attempts to manufacture the illusion of some transfer of interest greater than the

26   original SAA. But analysis of the Amendment reveals the insertion of the "non" before

---

27   [4] Righthaven's suggestion that Democratic Underground cannot challenge its standing to sue as a non-party to the
     SAA finds its answer and rebuttal in *Silver* and the other cases cited above, like *Gaia Technologies* or *Benchmark*,

28   which necessarily allowed such challenges either by the parties or the court itself.

REPLY IN SUPPORT OF DEFENDANT'S
SUPPLEMENTAL MEMO                          6                    CASE NO. 2:10-cv-01356-RLJ (GWF)

1    "exclusive" to be a change in optics only.  Stephens Media still controls all exclusive rights, and

2    the Righthaven shakedown will continue to operate exactly as it has before, with Righthaven's

3    interest remaining only pursuit of litigation, and nothing more.

4         Even in defining the rights that Righthaven receives, Section 7.2 of the Amendment

5    effectively nullifies them.  Specifically, although Righthaven now purportedly holds some rights

6    to "Exploit" the work beyond litigation, it cannot do so in any manner without giving Stephens

7    Media 30 days notice and opportunity to object.  *Id.* § 7.2.  Transparently, this provision preserves

8    Stephens Media's authority to make all decisions about exploitation of the work, since it may

9    "within 14 days of providing notice" reclaim "all right, title and interest" in the copyright through

10   payment of a nominal $10 fee to Righthaven.  *Id.* § 8.1.  Righthaven lacks even the option to

11   license in breach of Stephens Media's right to pre-approve and to pay contract damages.  Rather,

12   consistent with its status as the true owner, Stephens Media has an uncontestable right to enjoin

13   such use.  *Id.*  (Righthaven's failure to give notice is "a material breach of this Agreement and

14   would cause Stephens Media irreparable harm," remedial by an injunction).  In reality, Stephens

15   Media remains that exclusive licensee even after the Amendment:  it not only has unlimited rights

16   to use the work, it retains the *exclusive* rights to the work until *it decides to approve* exploitation

17   by another—an event not even alleged to have happened.

18        Moreover, any attempt by Righthaven to exploit the work on its own behalf would be

19   inconsistent with its own charter.   The only provision of the RHOA that authorizes non-litigation

20   conduct allows Righthaven to license other person's works on a commission basis, not to license

21   works on its own behalf.  *See* RHOA § 3.2(g) (third parties may "repose" rights in Righthaven for

22   it to collect royalties, only under a structure whereby Righthaven would "receive a percentage of

23   said royalties in consideration of the Company's service in this regard").  Righthaven has neither

24   authority nor legal capacity to exploit any rights without Stephens Media's approval.

25        Perhaps as significant as what the Amendment did change is what it did not.  It did not

26   alter Stephens Media's absolute authority to decide whether or not to sue (SAA §3.3); to receive

27   reversion of the assignment if Righthaven declines to sue (*id.*); to halt any litigation and reclaim

28   the copyright at any time (*id.* § 8.2); and to encumber the copyright it purportedly does not own.

REPLY IN SUPPORT OF DEFENDANT'S                    7          CASE NO. 2:10-cv-01356-RLJ (GWF)
SUPPLEMENTAL MEMO

1    *Id.* §9.3. Even under the Amendment, all incidents of ownership and control stay with Stephens

2    Media, nullifying Righthaven's contrary claim.[5] *See, e.g., In re Computer Eng'g Assoc., Inc.,* 337

3    F. 3d 38, 46 (1st Cir. 2003) ("[t]o be an effective assignment, the assignor must divest itself of all

4    right, interest, and control in the property assigned").

5         **B.     Even If the Amendment Were Technically Effective, It Only Confirms the**
                 **Sham Nature of the Assignment and Cannot Confer Standing**

6

7        Even were this Court to conclude that the Amendment technically vested Righthaven with

8    some exclusive rights under Section 106, this would not change the fact that the Amendment

9    should be disregarded as a sham, created for the sole purpose of manufacturing standing. The

10    Court has the duty to look behind an arrangement purporting to conform with *Silvers* to determine

11    the actual substance of the transaction—a task best exemplified by Judge Wilson's opinion in

12    *Nafal v. Carter,* 540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd* 388 Fed. Appx. 721 (9th Cir. 2010).

13        Nafal claimed standing to sue to enforce a copyright in an Egyptian melody allegedly

14    infringed in the song "Big Pimpin." As here, Nafal had originally entered into an arrangement

15    providing no standing to sue—a "Joint Venture" with the exclusive licensee of the melody to

16    prosecute suits for its infringement. 540 F. Supp. at 1133. Several years later, Nafal entered an

17    additional agreement, signed by the exclusive licensee and the original copyright holder,

18    purportedly to become "co-exclusive licensee" in the copyright (a status that would confer the

19    right to sue), receiving "an undivided one-half (50%) of [the] rights, title and interest." *Id.* at

20    1141. In fact, however, just as here, Nafal's actual rights were substantially controlled by his

21    grantor. Specifically, the court found that "(1) he has no discretion to decide when an alleged

22    infringer should be sued; (2) . . . Plaintiff's 'interest' in [the work] would have been terminable if

23    a lawsuit had not been filed within 180 days; (3) [and] nearly every effort by Plaintiff to exploit

24    [the work] must be approved in advance by [the assignor]." *Id.* at 1143.

---

25    [5] Righthaven's suggestion that its entitlement to $1 per year from Stephens Media creates a beneficial ownership is
     specious. *See* Response at 10. A "beneficial owner" is "an author who had parted with legal title to the copyright in

26    exchange for percentage royalties based on sales or license fees." *Cortner v. Israel,* 732 F.2d 267, 271 (2d Cir. 1984)
     (*quoting*, H.R. Rep. No. 1476, 94th Cong., 2d Sess. 159, reprinted in 1976 U.S. Code Cong. & Ad. News 5659,

27    5775). The beneficial owner, as assignor, is entitled to assert an equitable interest because its revenue will fall if the
     *assignee* does not take care of the copyright. Righthaven claims to be an owner, not an assignor. Nor does its

28    interest depend on licensing by Stephens Media. It will get its right to a dollar no matter what. Amendment § 7.

1         Judge Wilson rejected this attempt to dodge the *Silvers* rule, finding the parties description

2 of an "Assignment Agreement" as creating joint ownership of the exclusive license "not

3 dispositive." Instead, the nature of the transaction was "'governed by the substance of what was

4 given to the licensee and not the label that the parties put on the agreement.'" *Id.* at 1141-42

5 (*quoting Althin CD Med., Inc., v. West Suburban Kidney Ctr.*, 874 F. Supp. 837, 843 (N.D. Ill.

6 1994)). Despite the purported grant of an "exclusive license," the reality of the transaction was

7 that "Plaintiff has no standing because he is at best a glorified non-exclusive licensee to whom

8 [the grantor] may from time to time assign a cause of action." *Nafal*, 540 F. Supp. 2d at 1143-44.

9 "The Court is not required to accept the formalistic labels attached by [the contracting parties] to

10 their agreement, which would permit them to massage the underlying effect of their contractual

11 relationship." The Ninth Circuit affirmed, agreeing that "the documents were a disguised

12 assignment of a cause of action prohibited under *Silvers*." *Nafal*, 388 Fed. Appx. at 723.

13         The same analysis applies to the effort by Righthaven and Stephens Media to massage

14 their own contractual relationship to disguise the assignment of a cause of action. This Court

15 should see through the relabeling of an "exclusive license" as a lesser, "non-exclusive" license for

16 which Stephens Media must, perversely, now pay an additional $1 a year royalty. Even post-

17 Amendment, Righthaven, like Nafal, cannot prosecute any infringement claim unless pre-

18 approved by its "assignor." SAA § 3.3; *see also Althin*, 874 F. Supp. at 843 (no standing to sue

19 where original copyright owner, "retained the sole right to determine whether or not any

20 infringement actions would be brought"). As in *Nafal*, the copyright will be "reassigned" to

21 Stephens Media if Righthaven does not go forward with suit within 60 days. SAA § 3.3. And,

22 going even further than in *Nafal*, Stephens Media can reclaim the copyright even *after* suit is

23 brought for the nominal price of $10. The "disguised assignment of a cause of action" here is at

24 least as obvious, and no more enforceable, than in *Nafal*.[6]

---

25 [6] Democratic Underground notes that it has asserted an affirmative defense of champerty, though it did not
affirmatively plead that cause of action in its Counterclaim. *See Del Webb Communities, Inc. v. Partington*, 2009
26 WL 3053709, at *3 (D. Nev. Sep. 18, 2009) (recognizing champerty cause of action in Nevada and describing it as
"maintaining a suit in return for a financial interest in the outcome"); Patry on Copyright, Section 5:136 (champerty
27 shown "where the assignment of the copyright was a sham designed to disguise the real intent of conveying the chose
in action"). It intends to amend its Counterclaim following decision of the outstanding motions to state such a claim
28 against Righthaven, and to the extent that leave to amend may be required, it respectfully so requests.

1    Remarkably, there is not even the pretense that, by relabeling Stephens Media's rights as

2  "non-exclusive," Righthaven will now start granting additional licenses to others.  To the

3  contrary, the declarations of Mr. Hinueber and Mr. Gibson attest only that the SAA was intended

4  to allow Righthaven to sue on Stephens Media's behalf, and that the intent of the Amendment is

5  to strengthen that possibility.  But that testimony ultimately backfires: it merely reconfirms that

6  the Amendment's purported reconstruction of some rights in Righthaven *other* than a naked right

7  to sue is slight of hand, designed to do nothing other than to skirt *Silvers*.

8    The very label of the Amendment as a purported "Clarification" evinces its disingenuity.

9  No one suggests that, when the SAA was signed, the parties intended the "exclusive" license to

10  Stephens Media actually to be "*non*-exclusive," or that Stephens Media would relinquish, rather

11  than "retain" all exclusive rights.  Nor, when the SAA expressly prohibited all exploitation of the

12  work by Righthaven, did the parties actually intend Righthaven to have the opposite rights. *See*

13  RHOA § 3.2(c).  No "clarification" was needed.  What the Amendment actually does is *reverse*

14  the language of the SAA, for no purpose other than to feign an ownership interest in Righthaven.

15    Examining the substance of this transaction, the sham is patent.  While a peppercorn may

16  be sufficient to constitute consideration for contract analysis, adding a nominal fee and the prefix

17  "non" is not enough to evade the requirement of an actual ownership interest in a copyright.

## CONCLUSION

19    For all of the foregoing reasons, Defendants respectfully request the entry of judgment in

20  favor of Defendants on the Complaint and denial of the motion to dismiss the Counterclaim.[7]

Dated:    May 20, 2011                          FENWICK & WEST LLP


                                                BY: */s/ Laurence F. Pulgram*
                                                    Laurence F. Pulgram

                                                Attorneys for Defendants

---

[7] To the extent the record is deemed not sufficient to grant judgment, Democratic Underground would be entitled to discovery regarding disputed facts, including those raised by the Hinueber and Gibson declarations.  In all events, dismissal of its Counterclaim could not be warranted absent such discovery.

REPLY IN SUPPORT OF DEFENDANT'S                    10                CASE NO. 2:10-cv-01356-RLJ (GWF)
SUPPLEMENTAL MEMO